J. M. WOODS, Plaintiff in Error, v. WILLIAM F. MEACHAM, Defendant in Error. —333 S. W. (2d) 567.

Western Section. August 31, 1959.

Certiorari Denied by Supreme Court March 11, 1960.

712

714

Nelson, Norvell & Floyd, and A. David Crawley, Memphis, for plaintiff in error.

Harry P. Rubert and Ricco Gatti, Jr., Memphis, for defendant in error.

BEJACH, J. This cause is before this court for the second time. It was also tried twice in the lower court. The first trial resulted in verdict for the defendant, which verdict was set aside and a new trial granted, on the ground that one of the jurors remembered during the trial that he had been in the vicinity of the accident at the time it had occurred and had seen car lights flashing, which facts he had not made known in answer to questions asked on voir dire. The defendant excepted and filed a wayside bill of exceptions. The second trial re-

sulted in a verdict for the plaintiff with judgment entered thereon for $9,500. After a motion for new trial had been overruled, a second bill of exceptions was filed and an appeal in error perfected to this court. At the first hearing in this court, the judgment of the Circuit Court was reversed, on the wayside bill of exceptions covering the first trial, and the jury verdict for the defendant was reinstated. Avery, Presiding Judge of this section of the Court of Appeals, wrote the opinion at that time. A petition for certiorari was granted by the Supreme Court, this court was reversed, and the judgment of the Circuit Court on the second trial reinstated. A petition to rehear was granted, however, and instead of reinstating the verdict of the second trial, the final ruling was that the cause be remanded to this court. It is, therefore, now before us for review of the record of the second trial in the Circuit Court, and disposition of the assignments of error on the second bill of exceptions. The action of the Supreme Court has become the law of the case, and it now becomes the duty of this court to consider and dispose of the assignments of error on the second trial, just as if the first trial had resulted in a mistrial. For convenience, the parties will be referred to, as in the lower court, as plaintiff and defendant, or called by their names.

The facts of the case are that on February 14, 1955, in Shelby County, just outside the City of Memphis, on Airways Road, about one block south of its intersection with Alcy Road, William F. Meacham, a pedestrian, was struck and injured by an automobile driven by defendant, J. M. Woods. The accident occurred at about 6:10 a.m., while it was still dark. Plaintiff, who lived in the vicinity of the place where the accident occurred, had just left

his home on the east side of Airways Road and was walking northwardly on the east side of Airways Road, either on the shoulder of the road or on the eastern part of the paved surface of same. Defendant was driving a Plymouth automobile northwardly along Airways Road; and, according to his testimony which is in accord with one of the allegations of plaintiff's declaration, his sight was blinded or his vision impaired by the bright lights of an automobile approaching from the opposite direction. He did not see plaintiff until he was within a few feet of him, whereupon he swerved his automobile to the left, in an effort to avoid striking plaintiff, but did not quite succeed in missing him. The defendant testified that he did not know whether he had struck plaintiff or missed him, but stopped his car a short distance north of the point of impact and returned to find plaintiff lying on the side of the road, where he remained with plaintiff until an ambulance came and removed plaintiff to a hospital. Plaintiff suffered a compound fracture of his left leg, and other injuries.

Suit was filed January 13, 1956. The second trial was held May 28, 29, 30, and 31, 1957, which second trial resulted, as stated above, in a verdict for plaintiff in sum of $9,500, for which sum, together with costs, judgment was entered on May 31, 1957.

The assignments of error on the second trial, which we are now called upon to consider and rule on, are seven in number. They are somewhat involved and, to some extent, overlap each other. We will not copy them into this opinion; but will dispose of them separately, discussing what we deem to be the material questions presented under each of them.

Assignment No. I complains of the refusal of the trial judge, at the second trial, to grant defendant's motion for a mistrial because of misconduct of plaintiff's attorney, which consisted of indicating to the jury that defendant had liability insurance, and suggesting a verdict of $10,000, which misconduct, it is claimed, resulted in the jury's rendering a verdict for $9,500.

The alleged misconduct of plaintiff's attorney occurred during his recross examination of the defendant, from which we quote, as follows:

"Recross examination by Mr. Rubert:

"Q. Mr. Woods, if this jury should give a $10,000 verdict against you, not one penny of it would come out of your pocket, would it?

"Mr. Crawley: I object to that.

"The Court: Sustained.

"Mr. Rubert: He brought that out about this child and that is a matter of sympathy, and I have a right to ask him if they gave a $10,000 verdict, not one penny would come out of his pocket.

"The Court: Just a minute. You questioned the jury about whether they would let sympathy enter into this lawsuit, and I am going to charge them that sympathy has nothing to do with it, so go on.

"Mr. Rubert: I think it is proper, and certainly in the interest of fair play. If they try to inject something your Honor is going to charge them as being irrelevant, improper and incompetent. I have a right to show these gentlemen here—(interrupted)

"The Court: I have ruled on the matter and that's all there is to it.

"Mr. Crawley: The defendant moves for a mistrial. No exemplary damages were alleged in the declaration and this outburst is entirely improper and prejudicial to the defendant.

"The Court: I am going to overrule the motion. Gentlemen, I instruct you to disregard that outburst between the lawyers; put it completely out of your mind, both the question Mr. Crawley asked about the child, and also Mr. Rubert's statement about where the money was coming from. Just disregard it; give it no consideration whatever. The remark by either of the lawyers had no place in this lawsuit, and I am instructing you to disregard it completely. It has nothing to do with the lawsuit whatever.

"Mr. Rubert: May I at this time apologize to your Honor and Gentlemen of the Jury."

As authority for their contention that the trial judge should have granted the motion for a mistrial, because sustaining the objection thereto, and instructing the jury to disregard same was inadequate, counsel for defendant cite the cases of Prewitt-Spurr Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S. W. 623, and Nashville C. & St. L. Ry. v. Mangrum, 15 Tenn. App. 518. They might also have added Pullman Co. v. Pennock, 118 Tenn. 565, 102 S. W. 73.

The misconduct involved in Prewitt-Spurr Mfg. Co. v. Woodall was, like that involved in the instant case, improperly calling to the attention of the jury that the defendant had, or probably had, liability insurance. Dur-

ing cross-examination of the surgeon who had treated Woodall, plaintiff's counsel asked, "Are you not the regular employed doctor of the insurance company?", and, after objection to that question had been sustained, he asked, "I will ask you if it is not a fact that the Prewitt-Spurr Mfg. Co. is insured in an accident liability company for liability occurring from this accident?", objection to which was also sustained. Thereafter, in his argument to the jury, plaintiff's counsel said, "But I will tell you this, and I think you can infer this much, that if the company had not had—I don't know whether it had or not; that is not for me to say; the evidence is silent upon it; but I say we are authorized from the testimony that is here to assume that this company had—some arrangement, with some insurance company or otherwise, by which it itself was not to bear the burden of any loss that might occur; otherwise, they would have been more careful regarding these dangerous things." In reversing a verdict recovered by the plaintiff, the Supreme Court, speaking through Mr. Chief Justice Beard, said:

"Should a verdict obtained under such conditions be permitted to stand? We think not. It is too well settled to require citation of authorities that in an action of negligence it is incompetent to show the defendant is insured against loss in case of recovery against him on account of his negligence. Notwithstanding the incompetency of such evidence, yet in the present case it is apparent the counsel of the defendant in error has completely succeeded in getting the jury to believe that an indemnity policy against the accident in question was held by this company as if it had been proven distinctly by witnesses. The effect of this could not have been other-

wise than prejudicial to the company, in that the jury would the more readily return a verdict against it upon the assumption that it was indemnified against loss.

"It is true the counsel, after the admonition of the trial judge to the jury that they should not consider 'that part of the argument' already quoted, sought himself to withdraw it; but the harm had been done, and neither admonition on the part of the court nor withdrawal by the counsel could neutralize it. Manigold v. Black River Traction Co. (Sup.), 80 N. Y. S. 861; Iverson v. McDonald, 36 Wash. 75, 78 P. 202." Prewitt-Spurr Mfg. Co. v. Woodall, 115 Tenn. 608-609, 90 S. W. 623-624.

In the case of Nashville C. & St. L. Ry. Co. v. Mangrum, 15 Tenn. App. 518, the misconduct of plaintiff's attorney complained of was his improper argument to the jury, which was calculated to prejudice the jury against the defendant. The opinion in that case, written by Heiskell, J., cites with approval both Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S. W. 623; and Pullman Co. v. Pennock, 118 Tenn. 565, 102 S. W. 73; and reversed the judgment of the lower court, although no mention had been made of liability insurance nor any sum suggested as the proper amount of a verdict.

In the case of Pullman Company v. Pennock, 118 Tenn. 565, 102 S. W. 73, in his closing argument, counsel for plaintiff said: "Gentlemen, it is for you to say how much damage you will assess against this defendant. The Pullman Company is a vast and wealthy corporation, which enjoys large and valuable privileges given it by the people of Missouri, Kentucky, Tennessee, and other

states. It enjoys these privileges and makes for itself a vast income. The public are absolutely at its mercy. There is a case almost identical with this where a man' was put out of a car, and the jury gave a verdict of $10,- 000, and the Supreme Court of the state on appeal sustained the verdict.'' No motion for mistrial was made, and the jury awarded to plaintiff a verdict of $500. On appeal, however, the misconduct of plaintiff's attorney was assigned as error, and the Supreme Court reversed the case, even though no motion for a mistrial had been made, and held that the verdict for $500 was excessive. From the Supreme Court's opinion, written by Mr. Justice Shields, later Chief Justice, and still later U. S. Senator, we quote, as follows:

"It is immaterial that the objection to the improper matter was sustained, and that counsel was reprimanded and fined. The purpose of counsel had been accomplished. The jury had been inoculated with the poison of the foreign matter improperly injected in the case, and every lawyer of experience knows the impossibility of removing the impression that has been made. It cannot be done. No verdict should be allowed to stand where counsel deliberately and persistently inject into the record matter calculated to prejudice the jury against the opposite party and influence the jurors in their deliberations. Tampering with juries in or out of court in any form cannot be tolerated. It corrupts the very fountains of justice and renders a trial worse than a farce. The client is responsible for the action of his attorney, and cannot be allowed to reap the benefit he improperly obtain by him. The conduct of counsel in this case could not have been intended for any other

purpose than to cause the jury to render an excessive verdict; and it is evident, considering the size of that found and the injuries sustained by the plaintiff, that his efforts were successful." Pullman Co. v. Pennock, 118 Tenn. 568-569, 102 S. W. 74.

As may be observed, the case of Prewitt-Spurr Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S. W. 623, was reversed because of misconduct of plaintiff's attorney, which consisted of improperly suggesting to the jury that defendant was protected by liability insurance. We will now consider the question of whether or not a jury verdict should be reversed solely on the ground that the jury did, or might have been induced to consider the fact that defendant was protected by liability insurance. We will discuss and quote from some of the representative cases dealing with that question.

In the case of Ingolsby v. Burnett, 163 Tenn. 173, 40 S. W. (2d) 1013, 1014, one of plaintiff's attorneys, in the presence of the jury, asked the plaintiff Mary Burnett, "State if the attorneys representing the company, the insurance company, asked you to go to their doctor, Dr. Rogers?" Defendant's objection to this question was sustained and the jury instructed to disregard same. The defendant's counsel moved the court for a mistrial, which motion was overruled; and such action was assigned as error on appeal. The Court of Appeals found as a fact that counsel asking the question was not familiar with the decision in Prewitt-Spurr Mfg. Co. v. Woodall, 115 Tenn. 605, 609, 90 S. W. 623, and affirmed the judgment in favor of the plaintiff. The Supreme Court denied certiorari, but published its opinion, which is written by Mr. Justice McKinney, and which opinion

is in large measure predicated on the annotation in 56 A. L. R. 1496 et seq. From that annotation, at pages 1509-1511, the Supreme Court's opinion quotes with approval, as follows:

" 'In accord, however, with the better view, the majority of the courts hold that prompt exclusion of questions designed to elicit testimony with regard to insurance carried by the defendant, coupled with the instructions to the jury to disregard the improper matter, sufficiently protects the defendant's rights, without requiring the judgment rendered to be reversed, especially if it can be said as a fact that the verdict was not affected thereby, *and the plaintiff does not persist in attempting to get the objectionable matter before the jury, and thus override the ruling of the court against him.*' (Emphasis ours.)

"This rule appears to us to be sound upon principle, and is supported by the decided weight of authority, and we therefore approve it.

"There are many qualifications and exceptions to the general rule excluding evidence of this character which are elaborated upon in the above annotation, beginning on page 1432.

"*Many authorities hold that where the attempt to get such incompetent evidence before the jury is willful, a reversal will be ordered.*" (Emphasis ours.) Ingolsby v. Burnett, 163 Tenn. 176-177, 40 S. W. (2d) 1014.

In Marshall v. North Branch Transfer Co., 166 Tenn. 96, 59 S. W. (2d) 520, the Supreme Court reversed a judgment based on a verdict, which, according to the

affidavits of four of the jurors, they had been persuaded to agree to by persuasion of other jurors, because the defendant, the Bus Company, had liability insurance and whatever judgment was rendered would be paid by the insurance company. From the Supreme Court's opinion written by Mr. Justice Swiggart, we quote, as follows:

"In declining to order a new trial because of this conduct of the jury, the Court of Appeals referred to the fact, as within common knowledge, that automobile owners and users are generally protected by liability insurance, and particularly to the fact, of which the jurors as citizens would be presumed to have knowledge, that operators of public buses are required by law to carry such insurance for the protection of the public. Code, sec. 5483. The court then held that reversal could not be predicated upon the fact that a juror stated in the presence of his fellow jurors that which each member of the jury was presumed to know.

"We would be strongly inclined to follow this ruling of the Court of Appeals if nothing more occurred than a passing or casual reference to the fact or probability that the defendant was protected by liability insurance. * * *

"The case before us involves more than mere comment by the jury on the fact of insurance. At a time when the members of the jury were not agreed as to defendant's liability for plaintiff's injuries, 'the matter of insurance was discussed for sometime', and some of the jurors urged the assumed fact of insurance upon their dissenting fellow jurors as a reason for the surrender of the conclusion they

had gained from the evidence. The language is that some of the jurors 'kept insisting that on account of the insurance' a verdict for the plaintiff should be agreed to and rendered.

"We think this was positive misconduct on the part of the jury, calculated to prejudice the rights of the defendant and to defeat the proper performance of the jury's duty to render an impartial verdict on the law and evidence submitted to them in open court." Marshall v. North Branch Transfer Co., 166 Tenn. 99-101, 59 S. W. (2d) 521.

The case of Lasater Lumber Co. v. Harding, 28 Tenn. App. 296, 189 S. W. (2d) 583, in which case the opinion of the Court of Appeals (Western Section), was written by Ketchum, J., is, we assume, the case referred to and relied on by the learned trial judge in overruling the motion for a new trial in the instant case. In that case, the fact that defendant was protected by liability insurance was called to the attention of the jury by testimony of the defendant's secretary and treasurer while testifying as a witness on its behalf. In that situation, both the trial judge and the Court of Appeals properly denied the application of defendant to have the jury's verdict set aside on that ground. Furthermore, the verdict in that case had been directed by peremptory instruction in favor of the plaintiff, and the amount of the verdict was not excessive. That case, in our opinion, cannot be considered as authority for the ruling made in the instant case by the trial judge. From Judge Ketchum's opinion, we quote, as follows:

"The third assignment of error is based upon the action of the court in denying the defendants' motion

for a mistrial upon the ground that plaintiff's attorney propounded improper questions to the witness W. H. Lasater, secretary and treasurer of the defendant Lumber Company, on the subject of liability insurance. The facts necessary to be stated in consideration of this assignment are as follows:

"This witness on his direct examination was asked:

" 'Q. After you found out about the accident on your return, Mr. Lasater, what did you do about the matter? A. We got in touch with the insurance people and the attorney, and turned the whole matter over to them to take care of. We contacted the doctor that waited on Mr. Harding and talked to him about it.'

"This was the end of the direct examination of the witness, and the plaintiff's attorney on his cross-examination then asked him the following questions:

" 'Q. You say you got in touch with the insurance people? Who are they? A. The agent of the insurance company.

" 'Q. 2. And turned the matter over to the insurance company? A. To the attorney.'

" 'Q. 3. Is that correct? A. Yes, sir.'

\* \* \* \* \* \*

"In view of the fact that the subject was first introduced by defendants' counsel on the direct examination of the witness, we do not think the subsequent reference to it by plaintiff's counsel on his cross-examination could have occasioned any serious

injury to the defendants, and such damage as may have been done was cured by the prompt action of the trial judge in directing the jury to disregard the evidence entirely. See annotations on the subject in 56 A. L. R. 1451; 74 A. L. R. 858; 95 A. L. R. 399; and 105 A. L. R. 1327. To reverse the judgment upon this ground would be in effect to assume that the jury disregarded the positive instructions of the court and based their verdict in part, at least, upon evidence which they had been instructed not to consider." Lasater Lumber Co. v. Harding, 28 Tenn. App. 306-308, 189 S. W. (2d) 587-588.

In Potts v. Leigh, 15 Tenn. App. 1, it was held that where the fact of liability insurance was brought before a jury by the voluntary statement of a witness, a motion for mistrial was properly denied. From the opinion of the Court of Appeals (Middle Section), written by De-Witt, J., we quote as follows:

"The third assignment is that the Court erred in refusing to grant defendant's motion for a mistrial, which was based upon the testimony of the plaintiff's witness J. G. Redelsheimer to the effect that the defendant following the accident, 'called his insurance company', the said testimony being given in the presence and hearing of the jury.

"It is not claimed that this reference to the insurance company was not by way of voluntary statement on the part of the witness. It was not purposely injected into the case by the plaintiff or his attorneys. In fact, it is clear that they did not anticipate that the witness would make such reference. The testimony was as follows:

" 'Q. Did you see Mr. Potts, the defendant, at the scene of the accident? A. I did.

" 'Q. Where did you see him? A. He was standing by the car to the best of my recollection at the time, and the boy seemed to be worried, a young kid and I wanted to give assistance, if I possibly could, and I told him he had better notify someone of the accident, and he asked me if somebody would call the company and have them come and get those messages and deliver them.

" 'Q. That is the Western Union? A. Yes, sir, and he also called his insurance company.

" 'Q. We did not want to know about that, did you go from the scene of the accident until the—'

"Here the witness was interrupted by counsel for defendant who requested that the jury retire; and when the jury had retired, the counsel interposed a motion for a mistrial which was overruled.

"This question of error in allowing evidence that defendant had liability insurance to be brought before the jury arises frequently in such actions, and *calls for treatment according to the circumstances of each case.*" (Emphasis ours.)

"Certainly, where the plaintiff or his counsel deliberately seeks to introduce such evidence or persist in it, and it is brought before the jury, the error is reversible. Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S. W. 623; Brick Co. v. Dotson, 8 Hig. 218; Cleveland v. Hunter, decided by this court January 17, 1931. The rule excluding such evidence so offered has been rigidly applied in Tennessee, as well as in nearly all

of the other States." Potts v. Leigh, 15 Tenn. App. 4-5.

In the case of Seals v. Sharp, 31 Tenn. App. 75, 212 S. W. (2d) 620, in an able opinion, written by McAmis, J. (now Presiding Judge), the Court of Appeals (Eastern Section) reviewed the earlier decisions of appellate courts of Tennessee on this subject, including those hereinabove cited. From that opinion we quote, as follows:

"We are urged with much zeal and ability to reverse because, it is said, defendants were denied a fair trial by the purposeful interjection of incompetent and highly prejudicial evidence tending to show that the truck was covered by public liability insurance. This again brings to the fore the troublesome question of the propriety of continuing the trial and refusing to order a mistrial where such evidence crops out or is intentionally introduced by counsel or by the plaintiff himself during the progress of the trial.

\* \* \* \* \* \*

"Cases in this State dealing with the subject of reversal on appeal because of the harmful effect of liability insurance being discussed in the presence of the jury fall into two groups. The first group deals with the effect of such discussion taking place in the jury room, a question not here involved. The other involves, like the present case, the effect of evidence or remarks of counsel before the jury. In this group fall Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S. W. 623; Ingolsby v. Burnett, 163 Tenn. 173, 40 S. W. (2d) 1013; Harbin v. Elam, 1 Tenn. App. 496;

Stearns v. Williams & Price, 12 Tenn. App. 427; Potts v. Leigh, 15 Tenn. App. 1; Lasater Lumber Co. v. Harding, Tenn. App. 189 S. W. (2d) 583.

"While a number of these cases hold, at least by inference, that if a plaintiff or his counsel persist in seeking to improperly influence the jury by voluntary references to liability insurance a mistrial should be granted, in none of them was a judgment actually reversed except in Mfg. Co. v. Woodall, decided before the Act of 1911, now Code Section 10654, (sec. 27-117, T. C. A.), referred to above. Judge DeWitt lays down the rule that the question 'calls for treatment according to the circumstances of each case.' Potts v. Leigh, supra. And in Lasater v. Harding, supra, the most recent case on the question, it was said that the tendency of the courts is toward a more liberal rule in refusing reversals on the ground that it appears from the evidence that the defendant carried insurance, since jurors have become more cognizant of the fact that the carrying of liability insurance is now a general practice. In that case the proof was sufficiently clear to justify the action of the trial court in directing the jury to find the issues in favor of the plaintiff and when, after reviewing the evidence, it was found that the verdict was not excessive the judgment was affirmed.

"In the present case the plaintiff was asked to state what the defendant had said to him about the accident to which he replied: 'He asked me who I was and said he wanted to turn it in to the insurance company.' The court thereupon instructed the jury in language we consider sufficiently emphatic not to

consider the statement of the witness for any purpose.

\* \* \* \* \* \*

"The objectionable statement appears to have been made in connection with getting before the jury an admission made by Seals and we do not think under all the circumstances the refusal of the court to declare a mistrial should be overruled. Necessarily, some discretion must be left to the trial judge in such matters and it is not altogether a matter of meting out punishment to the plaintiff for his wrongdoing that is to be considered. The State is interested in the repose of litigation and if it is clear that justice has been done and that another trial would result in the same verdict as in the former trial a reversal should be denied. Each case should be determined upon its own facts and if it affirmatively appears from lack of support in the evidence for the verdict rendered or otherwise that harm has resulted the court should not hesitate to reverse. In this case, however, when we look to the evidence, it not only does not appear that prejudice resulted, but, on the contrary, it affirmatively appears, both from the finding on the issue of liability and the amount of the verdict, that the result was not affected by references to insurance.

"Under these circumstances, the Statute, Code Section 10654 (sec. 27-117, T. C. A.), comes into play to prevent a reversal on appeal. See Thomason v. Trentham, supra, 178 Tenn. 37, at page 41, 154 S. W. (2d) 792, at page 793, 138 A. L. R. 461." Seals v. Sharp, 31 Tenn. App. 77, 80-82, 212 S. W. (2d) 621.

The case of Seals v. Sharp, 31 Tenn. App. 75, 212 S. W. (2d) 620, has been cited, so far as we have been able to find, in only three cases since its rendition. In Logwood v. Nelson, 35 Tenn. App. 639, 646, 250 S. W. (2d) 582, a reversal was refused because among other reasons, the defendant in that case had not moved for a mistrial when the question of insurance was injected into the case. In Olson v. Sharp, 36 Tenn. App. 557, 571, 259 S. W. (2d) 867, on the authority of Grace v. Louisville & N. R. Co., 19 Tenn. App. 382, 89 S. W. (2d) 354, it was held that the admission in evidence of a certificate of indemnity insurance was proper, where it was offered for the purpose of establishing the relationship of master and servant, and the jury was instructed to consider it for that purpose only. In Finks v. Gillum, 38 Tenn. App. 304, 316, 273 S. W. (2d) 722, 728, verdicts were affirmed on the authority of Seals v. Sharp, 31 Tenn. App. 75, 212 S. W. (2d) 620 and Code section 10654 (sec. 27-117, T. C. A.) because, as was said in the opinion of the Court of Appeals (Eastern Section), ''There is no evidence that the attorneys for plaintiff made any effort to get the question of insurance before the jury, or that either of plaintiffs deliberately attempted to do so. At most, they were normal, ordinary statements which any witness might be expected to make. The references to insurance here made were meager. It does not appear that plaintiffs referred to any type of insurance.''

■■ The rule which we deduce from the above quoted authorities, and which we think applicable to the facts of the instant case, is that where the injection of the question of liability insurance into the case was made deliberately or intentionally by counsel for plaintiff, or where counsel for plaintiff persisted in the matter after the

court had sustained an objection, a reversal should be granted; and, especially so where, as in the instant case, the amount of the jury's verdict indicates that the improper conduct had the desired effect.

It is true, in the instant case, the learned trial judge, at the time of overruling the defendant's motion for a new trial, said:

"Now, you know, I don't think Mr. Rubert made that remark deliberately at all; I don't think that would be a true test, but the true test would be whether or not it was prejudicial. Something has been said or insinuated that Mr. Rubert made it deliberately."

In spite of the fact that the learned trial judge saw and observed the attitude of the parties and their counsel, at the time the incident occurred, we cannot concur in the trial judge's opinion that it was not done deliberately or intentionally. We can think of no plausible explanation other than that it was for the purpose of suggesting to the jury a verdict up to the amount of $10,000; and, that it was deliberate, is emphasized by the fact that it was repeated after the judge had ruled the question improper. Furthermore, this misconduct of plaintiff's counsel had the double vice of suggesting to the jury both the existence of liability insurance and also the amount of the verdict which he desired to have returned, thus running afoul of the decisions of the Supreme Court in both Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S. W. 623, and Pullman Co. v. Pennock, 118 Tenn. 565, 102 S. W. 73.

On behalf of plaintiff, it is sought to justify the conduct of his counsel by contending that it was provoked by defendant counsel's effort to inject sympathy for de-

fendant into the case by his redirect examination of the defendant. This redirect examination dealt with an effort on the part of counsel for defendant to have him explain why he had a part-time job with the Watkins Company, in addition to his regular job with the Illinois Central Railroad. This fact had been brought out on cross examination by a line of questions tending to show that because defendant was holding two jobs, and was, therefore, at the time of the accident, so tired and sleepy that he did not see plaintiff; and this, notwithstanding no such allegation was contained in the declaration, and it was directly contrary to the allegation in the plaintiff's declaration that the accident was caused by the plaintiff's being blinded by the lights of another car. The redirect examination, which it is claimed provoked plaintiff's counsel, Mr. Rubert, is as follows:

"Q. About this working for the Watkins Company; why were you working for the Watkins Company; was that part time or full time? A. It was part time.

"Q. Why were you doing that? A. So I could support my family. I have a big family. I have a crippled child and was trying to support her and the rest of my family.

"Q. What is wrong with that child? A. She has polio, a bad case of polio.

"Mr. Crawley: That is all."

It is our opinion that this did not constitute sufficient provocation to justify the misconduct of plaintiff's counsel. Conceding that the question and answer about defendant's child having polio were improper, at least,

they were not repeated after the trial judge had ruled that they were improper. In any event, two wrongs do not make a right. Neither do we think the judge's instruction to the jury to disregard the incident was sufficient to eradicate the damage which had already been done. In our opinion, defendant's motion for a mistrial should have been granted. As was said by the Supreme Court in Mfg. Co. v. Woodall,

"It is true the counsel, after the admonition of the trial judge to the jury that they should not consider 'that part of the argument' already quoted, sought himself to withdraw it; but the harm had been done, and neither admonition upon the part of the court nor withdrawal by the counsel could neutralize it. (Citing authorities).

"We regard the present case, in the phase we have been considering, as exceptional in its character, and while, under ordinary conditions, this court will not interfere with the exercise of legal discretion by the Circuit Court in the limitations he imposes or refuses to impose upon counsel in the conduct of their cases, and in declining a new trial by reason of such conduct, yet, when we find a persistent abuse of well-established and universally recognized rules of correct practice, it is then our duty to interpose, and do that which should have been done by him. The judgment is therefore reversed, and the case remanded for a new trial." Mfg. Co. v. Woodall, 115 Tenn. 609, 90 S. W. 624.

Also, as was said by the Supreme Court in Pullman Co. v. Pennock:

"It is immaterial that the objection to the improper matter was sustained, and that counsel was reprimanded and fined. The purpose of counsel had been accomplished. The jury had been inoculated with the poison of the foreign matter improperly injected in the case, and every lawyer of experience knows the impossibility of removing the impression that has been made. It cannot be done." Pullman Co. v. Pennock, 118 Tenn. 569, 102 S. W. 74.

It will be noted that, in the Pullman Co. case, the trial judge not only instructed the jury to disregard the improper matter injected into the case, but also reprimanded and fined the offending attorney; but, even though no motion for a mistrial was made, the Supreme Court reversed the case.

In Seals v. Sharp, 31 Tenn. App. 75, 80, 212 S. W. (2d) 620, 622, McAmis, J. (now Presiding Judge) said, after his listing of previous cases on the subject:

"While a number of these cases hold, at least by inference, that if a plaintiff or his counsel persist in seeking to improperly influence the jury by voluntary references to liability insurance a mistrial should be granted, in none of them was a judgment actually reversed except in Mfg. Co. v. Woodall, decided before the Act of 1911, now Code section 10654 (sec. 27-117) T. C. A., referred to above."

Despite this statement by the Presiding Judge of this court, and notwithstanding the harmless error statute referred to, we think the instant case should be reversed and a new trial granted. We cannot say that the harmless error statute, (sec. 27-117, T. C. A.), referred to in the above quotation, saves the situation for plaintiff. The

amount of the jury's verdict alone, $9,500, which is only $500 less than the limit suggested by plaintiff's counsel, is sufficient to indicate to us that counsel's suggestion registered with the jury. We therefore hold, after an examination of the entire record in this cause, that this error has probably affected the results of the trial; and, assignment of error No. I is, accordingly sustained.

By assignment of error No. II, defendant complains of the meagerness of the trial judge's charge. Specifically he points out that the judge's charge did not give the theories of the parties, define negligence, or reasonable care, define legal or proximate cause, or remote cause, did not explain what was meant by the burden of proof, nor charge on the subject of contributory negligence, either proximate or remote, and did not charge with reference to the statutory duties of the parties.

■ At the outset, in disposing of this assignment of error, our ruling is somewhat simplified by the settled rule of law that mere meagerness of the judge's charge cannot be complained of on motion for new trial, or on appeal, unless the party complaining has submitted special instructions covering the alleged omissions, or has otherwise called the matter to the judge's attention so as to give him an opportunity to supply the claimed omissions. Management Services, Inc. v. Hellman, 40 Tenn. App. 127, 289 S. W. (2d) 711; Brakebill & Hamilton v. South Knoxville Contracting & Const. Co., 14 Tenn. App. 531. In the instant case, defendant, in assignment of error No. III complains of the failure on the part of the trial judge to give four special requests submitted by him. The presentation of these special requests, coupled with the failure of the judge to give same, mitigates, to

some extent, on behalf of defendant, the rule of law as to meagerness of the charge.

It is the trial judge's position, with reference to this assignment of error, as was stated by him at the time of overruling the motion for new trial, that counsel had stipulated, that there was only one issue as to the liability or nonliability of the defendant, and that was whether the plaintiff was walking on the shoulder or on the paved portion of the highway; and, consequently that it was not necessary for him to charge on the subject of negligence or contributory negligence. The stipulation referred to occurs in the record at or near the conclusion of defendant's proof and before the introduction of rebuttal testimony by plaintiff. From the bill of exceptions, we quote as follows:

"Mr. Crawley: That concludes the Defendant's proof except for the reading of one of the Statutes on which the Defendant relies.

"The Court: You may read the Statute.

"Mr. Crawley: If counsel has no objection, I will read the Statute which I copied right out of the Statute book.

"Gentlemen, this is the Statute of the law of Tennessee on which the Defendant relies, in his defense. At the time this accident occurred, it was known as Section 2700.8, formerly known as Section 2687. Paragraph d, from Williams' Tennessee Code:

" 'Pedestrians shall not use the highway other than the sidewalk thereof, for traffic, except when required to do so by the absence of sidewalks, reasonable, suitable and passable for their use, in which

case they shall keep as near as reasonably possible to the extreme left side or edge of same.'

"That concludes the Defendant's proof.

"The Court: That Statute just read to you, 'left side'; it means the left side of the direction in which the pedestrian is walking.

"Mr. Crawley: That concludes the Defendant's proof.

"Mr. Rubert: I have one rebuttal witness.

"*Jury Out*

"The Court: I discussed this with you gentlemen and, as the Court sees it, there is only one issue here; that is, as to the liability or non-liability, and that is whether or not the Plaintiff was walking on the shoulder or on the paved portion of the highway. As I see it, that is the only issue we have.

"Mr. Rubert: For the Plaintiff, that is correct.

"Mr. Crawley: For the Defendant, that is correct."

As the cause had been presented, it was the theory of plaintiff that he was walking on the shoulder of the highway, on the right hand side of same, in the direction in which he was going, and that the plaintiff, traveling in the same direction, had run off the paved portion of the highway onto the shoulder where plaintiff was struck and injured; whereas, it was the theory of defendant, on the other hand, that plaintiff, at the time he was struck by defendant's automobile, was walking on the right hand portion of the paved surface of the highway.

From the judge's statement, made at the time of over-ruling the motion for a new trial, we quote, as follows:

"It was the plaintiff's contention all the way through that if Meacham was walking, that is, he was walking well off the paved portion of the highway, and it was the defendant's contention that he was walking well on the paved portion of the highway. The way it was put to the jury was, if he was on the highway, if he was on the paved portion of the highway, then there could be no recovery, which was the same thing as the court telling the jury that if he was on the paved portion of the highway, he would be guilty of contributory negligence as a matter of law, as was done in the Donaho case [Donaho v. Large, 25 Tenn. App. 433, 158 S. W. (2d) 447]. So, I think the sole issue of fact which the court submitted to the jury, as to the question of liability, made it unnecessary for the court to submit the entire charge on negligence; that is, because if he were on the highway he could not recover, on the paved portion of the highway, then he could not recover. Why should the court charge negligence of the plaintiff, that if the plaintiff was walking on the paved portion of the highway he would be guilty of contributory negligence, because, as I have said, if he was walking on the paved portion of the highway, he simply could not recover, and that is what the court told the jury. However, on the other hand, if the plaintiff was walking on the shoulder of the highway, that part of the highway which was not for motor vehicular travel, if he was walking on the shoulder, especially where a person is on the shoulder, he has a right to expect that the motor vehicles

will remain on the paved portion of the highway. The defendant, all the way through contending that he was on the paved portion of the highway when he was struck, and not on the shoulder.''

This explanation of the trial judge is, in the opinion of this court, completely sufficient, so far as it deals with the omission of the charge on direct contributory negligence, but insufficient so far as it deals with negligence on the part of defendant, or with remote contributory negligence, on the part of plaintiff. Furthermore, in the opinion of this court, the reading of the statutes which required that pedestrians walk on the left hand side of the highway, should have been sufficient to put the court on notice that defendant was not intending to stake his whole defense on whether or not the jury found as a fact that plaintiff was walking on the paved portion of the highway. If, for example, the jury had found as a fact that at the time plaintiff was struck by defendant's automobile, defendant was driving carefully, at a reasonable rate of speed under the circumstances, and keeping a proper lookout ahead, but that, at that particular instant he was blinded by the bright lights of an approaching car, as was alleged in plaintiff's declaration, and as was contended by defendant, the jury might also have found, in that situation, that defendant was free from any negligence which proximately caused the injury to plaintiff; but, under the judge's charge, as actually given, the jury was precluded from such finding. Also, it is apparent from the judge's statement that the statute read by defendant's counsel, as construed by him, applied only to the paved portion of the highway. With that construction of the law, we do not agree. The statute, as read to the jury, was at the time of the accident, con-

tained in section 2700.8, subsec. (d), 1950 Supplement to the Code of Tennessee.

■ With slight amendments thereto, this statute is now found in section 59-838, T. C. A., which reads as follows:

"(a) Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.

"(b) Where sidewalks are not provided any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction."

Our construction of the term "highway", or "roadway", as it appears in either or both of the above statutes, is that it includes the shoulders as well as the paved portion of the roadway. The correctness of this construction is clearly indicated by the language used by Mr. Chief Justice Neil in Standridge v. Godsey, 189 Tenn. 522, 226 S. W. (2d) 277, 280 (decided in 1949), as follows:

"The requirement of the statute that pedestrians walk on the left side of the highway *facing* oncoming automobiles was to compel them to see approaching vehicles and immediately step off the highway to their left and be out of danger."

Certainly, in the instant case, if plaintiff had been walking on the left side of the highway, whether on the shoulder or on the paved surface, the accident here involved would not have happened; and the jury should have been permitted to consider that, as constituting remote contributory negligence on the part of plaintiff.

 The use of the phrase "walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction", as used in section 59-838, T. C. A., which was first enacted as section 37 of chapter 329, Acts of 1955, indicates the purpose and intention of the General Assembly of Tennessee to adopt the construction which had theretofore been placed on the pre-existing law. As was held by the Court of Appeals (Eastern Section) in Donaho v. Large, 25 Tenn. App. 433, 158 S. W. (2d) 447, 448, a plaintiff walking along the right hand side of a roadway and struck by an automobile traveling in the same direction, was, as a matter of law, guilty of contributory negligence and barred from any right of recovery. The decision in Donaho v. Large was approved by the Supreme Court in Standridge v. Godsey, 189 Tenn. 522, 226 S. W. (2d) 277, and modified to the extent, only, that it was held, in the Standridge case, that it was impossible for the plaintiff, under the particular facts of that case, to safely comply with the provisions of that law, and that, under those circumstances the question of whether or not plaintiff's violation of that law was the proximate cause of his injuries, should have been submitted to the jury.

Also, in the case of Hamilton v. Moyers, 24 Tenn. App. 86, 140 S. W. (2d) 799, which involved a violation of the statute here involved, a verdict of $5,000 was approved by the trial court and affirmed by the Court of Appeals, in which case, the opinion of the Court of Appeals, written by McAmis, J., (now Presiding Judge), said:

"The court charged the jury that the deceased was walking along the right side of Russell Street with his back to overtaking traffic, when struck, in violation of ordinances of the City of Jefferson City

and of the State statute above mentioned, such conduct would constitute negligence on the part of the deceased which, if it proximately caused or contributed to his death, would bar a recovery but that if such conduct constituted only a remote cause of his death then such neligence on the part of the deceased would only go in mitigation of the damages and would not bar a recovery.

"The small amount of the recovery, representing only about five years' earnings of the deceased who had an expectancy of 39 years, suggests that the jury adopted the view that deceased was guilty of remote contributory negligence and, accordingly, reduced to the sum stated the recovery in behalf of the administrator." Hamilton v. Moyers, 24 Tenn. App. 88-89, 140 S. W. (2d) 801.

██ Applying the above to the facts of the instant case, we agree with the learned trial judge that if the plaintiff was walking on the paved portion of the highway, under the decision in Donaho v. Large, 25 Tenn. App. 433, 158 S. W. (2d) 447, 448, he was, as a matter of law, guilty of direct and proximate contributory negligence and entitled to no recovery for his injuries. If, however, as was contended by him, he was walking along the shoulder of the right hand side of the highway and was injured, as he contended, by the plaintiff's running off the paved surface of the highway onto the shoulder, there would still have been left the question of proximate cause and remote contributory negligence, both of which were excluded by the judge's charge as given. Aside from the reading by defendant's counsel of the statute defining the duties of pedestrians, contained in section 2700.8, 1950 Code Supplement, just before closing de-

fendant's proof, defendant submitted a special instruction which quoted this statute in full, which special instruction was refused, but which should have been sufficient to put the court on notice that defendant was not waiving his rights thereunder.

For the reasons hereinabove stated, we thing assignment of error No. II should be sustained, in part.

On behalf of plaintiff, it is contended that assignment of error No. II should be overruled because, even if it was error on the part of the judge not to charge as fully as it is now contended by defendant that he should have charged, such error was caused or invited by defendant's counsel when they agreed to the stipulation referred to above. For this contention, the case of Gentry v. Betty Lou Bakeries, 171 Tenn. 20, 100 S. W. (2d) 230, is cited. Plaintiff's counsel might, also have cited, for this proposition of law, Bealafelt v. Hicks, 13 Tenn. App. 18; Herstein v. Kemper, 19 Tenn. App. 681, 94 S. W. (2d) 76; Gardner v. Burke, 28 Tenn. App. 119, 187 S. W. (2d) 25; and Pickard v. Ferrell, 45 Tenn. App. 460, 325 S. W. (2d) 288. What we have said above indicates our reasons for holding that, in the instant case, this proposition of law is only partially applicable.

◼ Assignment of error No. III complains of the refusal of the trial judge to give in charge four special requests submitted by defendant. These special requests do not appear in defendant's assignments of error filed in this court, but they are in the record as part of defendant's motion for a new trial. In our opinion, this assignment must be overruled because said special requests, as found in the motion for a new trial, are either not technically and completely accurate in the language

therein used, or are not sufficiently applicable to the facts of the instant case, as developed by the proof, to constitute reversible error.

■ Assignment of error No. IV is: "The trial court erred in instructing the jury as follows, to wit:

" 'Now, if you jurors find from the preponderance of the evidence that the plaintiff was walking on the shoulder of the highway, he would not be guilty of violating this statute (1950 Code Sup., sec. 2700.8).' "

A careful examination of the judge's charge, as same appears in the record, fails to disclose that he charged the jury as is alleged by this assignment of error. It necessarily follows, that assignment of error No. IV must be overruled.

While the language complained of was not included in the judge's charge, as given, nevertheless, it is apparent, from what he said at the time of overruling the motion for a new trial, that said language correctly reflects his views on the subject. We have already expressed, in disposing of assignment of error No. II, our opinion that the judge was in error in maintaining this view of the statute referred to; and further comment on the subject is unnecessary.

Assignment of error No. V complains, (a) That there was no material evidence to support the jury's verdict, (b) That the evidence preponderates against the verdict, (c) That the verdict is contrary to the law, and (d) That the verdict is so contrary to the facts and evidence in the case and inconsistent therewith, as to constitute prejudice, passion and caprice.

 The only one of these objections, with which this court has authority to deal, is that there was no material evidence to support the verdict. Obviously, this assignment of error cannot be sustained, because there was substantial evidence from which the jury could have found as a fact that plaintiff was off the paved surface of the highway, on the shoulder of same, when he was hit by defendant's automobile; and, under the judge's charge, as given, if the jury found that to be a fact, it had no discretion except to return a verdict in favor of the plaintiff. Plaintiff testified that he was spun around and fell in his tracks when defendant's automobile hit him and that he lay in the same place until the ambulance came for him. Even with reference to the proof that the tire track of the right rear wheel of defendant's automobile showed that it remained on the paved surface of the highway until after it had passed the place of the accident, there was some countervailing proof from which the jury might have decided that this track was made by the left rear wheel.

 We are disposed to agree with counsel for defendant that the verdict in the instant case is contrary to the preponderance of the evidence, but this court is not concerned with that question, and has no authority to reverse because of such opinion. Callahan v. Town of Middleton, 41 Tenn. App. 21, 292 S. W. (2d) 501, 504; Benson v. Fowler, 43 Tenn. App. 147, 306 S.W. (2d) 49; Young v. Spencer, 44 Tenn. App. 83, 312 S. W. (2d) 479; De Rossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366; Accident & Casualty Ins. Co. v. Lasater, 32 Tenn. App. 161, 165, 222 S. W. (2d) 202; and numerous other authorities.

██ Assignment of error No. VI is that the amount of the verdict was so excessive and unjustified as to indicate passion, prejudice, corruption, misconduct, and unaccountable caprice on the part of the jury.

In our opinion, this assignment should be sustained.

If the cause were not being remanded for a new trial, because of sustaining other assignments of error, we would simply suggest a remittitur, and a remand would not, in that case, be necessary.

In view of the disposition which we have made of assignments Nos. I and II, is is obvious that, in our opinion, the amount of the jury's verdict, $9,500, is excessive. Since the case must be retried by another jury, however, we should not invade the province of that jury by indicating the exact amount by which we consider the present verdict excessive. Except where the amount is obviously excessive, the exact amount should be left to the sound discretion of the jury trying the case, under proper instructions of the court.

Assignment of error No. VII is somewhat complicated and involved; but inasmuch as this cause will have to be tried again, our ruling on same may have an important bearing on such new trial, so we will copy same in full herein, and rule on it. Said assignment of error is as follows:

"The trial court erred in overruling defendant's objections to questions and objections to efforts of plaintiff's counsel in attempting to show that defendant was sleepy or asleep at the wheel while driving his car at the time of the accident. Plaintiff-Appellee's proof in that regard was inconsistent with and contrary to his pleadings.

"Plaintiff alleged in his Declaration that:

" 'He (defendant) was driving his car when he was blinded by another car and as a result did not see the plaintiff and drive his car into and against the plaintiff.'

"But in the trial, plaintiff charged his theory and proof, and attempted to show that there had been no other cars on the road and no lights to blind or interfere with the vision of defendant or the plaintiff-pedestrian, and attempted to show that defendant was driving while asleep instead of driving when blinded by lights of oncoming cars.

"Emphasizing this variance and inconsistency between the pleading and the proof, plaintiff's counsel repeatedly asked defendant on cross-examination about defendant having two jobs and working at night and working for the Watkins Products Company and not having had enough sleep, and being sleepy and tired on the way home at the time of this accident.

"This line of questioning was not material to the issues joined by the pleadings, not consistent with their pleadings and was highly prejudicial to the defendant, and it was error for the trial Court to overrule defendant-appellant's objections thereto."

 This assignment of error is sustained. So far as plaintiff's witnesses other than himself are concerned, their testimony to facts different from those alleged in plaintiff's declaration should certainly affect their credibility; and, so far as plaintiff, himself, is concerned, he should have been considered judicially estopped to testify

contrary to the allegations of his declaration. Stamper v. Venable, 117 Tenn. 557, 560, 97 S. W. 812; Johnston v. Cincinnati N. O. & T. P. R. Co., 146 Tenn. 135, 240 S. W. 429; Roddy Mfg. Co. v. Dixon, 21 Tenn. App. 81, 105 S. W. (2d)513; Buice v. Scruggs Equipment Co., 37 Tenn. App. 556, 582, 267 S. W. (2d) 119. See also Annotations in 50 A. L. R. 980, 80 A. L. R. 619, and 169 A. L. R. 798. See, also, Wagner v. Niven, 46 Tenn. App. 581, 1959, 332 S. W. (2d) 511, certiorari denied by Supreme Court Feb. 5, 1960.

It results that this cause will be reversed and remanded to the Circuit Court of Shelby County, Tennessee for a new trial, consistent with this opinion.

The costs of the appeal will be adjudged against the plaintiff, William F. Meacham. The costs of the lower court may await the final outcome of the cause there.

Avery, P. J. (Western Section), and Carney, J., concur.