C. B. SWIFT and Southern Recreation Corp., Plaintiffs in Error, v. JOHN WIMBERLY, JR., b/n/f John Wimberly, Sr., Defendant in Error. —370 S. W. (2d) 500.

Western Section, Jackson. April 17, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

W. P. Moss, Sr. and W. P. Moss, Jr., Jackson, and Newman Brandon, Nashville, for plaintiffs in error.

Whit LaFon, Jack Woodall, and Thomas H. Rainey, Jackson, for defendant in error.

BEJACH, J. ▮ This cause involves an appeal in error by C. B. Swift and the Southern Recreation Corporation from a judgment against them in the sum of $6,000, based on a jury verdict of $7,500 which was reduced by the trial judge to $6,000. C. B. Swift is presi-

dent and manager of the Southern Recreation Corp., which corporation was operating a "go-cart" track at the V. F. W. Recreation Center in Jackson, Tennessee. A go-cart is a small gasoline propelled riding device. For convenience, the parties will be referred to as in the lower court, plaintiff and defendants, or called by their respective names.

Plaintiff, John Wimberly, Jr., sustained the injuries which resulted in the present suit while working on and riding on a go-cart in a shed adjacent to the go-cart track. Plaintiff's declaration contains only one count which alleges that on August 7, 1960 the defendant Southern Recreation Corp. was operating a go-cart track at the V. F. W. Recreation Center in Jackson, and that said Southern Recreation Corporation's manager and agent, C. B. Swift, permitted the plaintiff, a 14 year old boy, to help assemble "the rest of the 'go-carts' ", that were to be placed in operation under promise of a "regular job if his work was satisfactory", and, "that after he had just finished helping assemble a go-cart and was standing in the bumper, adjusting the carburetor, with the go-cart rolling slowly, "his leg was caught in an open metal gear", and he suffered serious injuries. The declaration charges violation of sections 50-711 and 50-712 T.C.A., and liability is predicated on alleged violation of said statutes. Said Code sections are as follows:

"50-711. PROHIBITED employment for children under sixteen.—No minor under sixteen (16) years of age shall be employed, permitted, or suffered to work in or in connection with any manufacturing or mechanical establishment. No minor under the age of sixteen (16) shall be employed, permitted or suffered to work in, about, or in connection with a

bowling alley or in the operation of any power-driven machinery. (Acts 1949, Ch. 201 secs. 2, 14; C. Supp. 1950, secs. 5314.1, 5314.3 (Williams, secs. 5315.2, 5315.14).)

"50-712. PROHIBITED occupations for children under eighteen.—No minor under eighteen (18) years of age shall be employed, permitted or suffered to work:

"(a) In setting up, adjusting, oiling or cleaning machinery; in proximity to any unguarded belts, machinery or gearing;

"(b) In or about any mine or quarry;

"(c) As a brakeman, engineer, fireman, conductor or motorman upon any railroad or railway, or in the operation of any railway or railroad car or as a yardsman or in switch tending, gate tending, or in connection with track construction or repair, or as a railroad telegraph operator;

"(d) In or about any plant manufacturing explosives or articles containing explosive components, or in the use or transportation of same;

"(e) In or about plants manufacturing iron or steel, ore reduction works, smelters, foundries, forging shops, hot rolling mills, or in any place in which the heating, melting or heat treatment of metals is carried on;

"(f) Logging operations, or in or about saw mills or cooperatives stock mills;

"(g) In operating or assisting to operate any power-driven woodworking machine or tool, laun-

dery machinery, dough brakes, grinding machinery, power punches or shears, wire or iron straightening or drawing machines, machinery used in the cold rolling of heavy metal stock;

"(h) As a driver of any motor vehicle;

"(i) In the operation of any elevator, crane or hoist;

"(j) In spray painting, or in occupations involving exposure to lead or its compounds or to dangerous or poisonous dyes or chemicals;

"(k) In occupations involving exposure to radioactive substances;

"(l) In any place or establishment in which intoxicating alcoholic liquors are served or sold for consumption on the premises or in which such liquors are manufactured or bottled;

"(m) In any pool room." (Acts 1949, Ch. 201, sec. 14; C. Supp. 1950, sec. 5314.13 (Williams, sec. 5315.14).)

Plaintiff testified that on August 7, 1960, when he was injured, he was 14 years of age, his birthday being November 20, and that he was 15 at his next birthday following the accident. He testified that on Saturday, August 6, 1960, he went to the V. F. W. Recreation Center when the go-carts were brought in that afternoon. He said that he asked either Mr. Swift or Mr. Anderson, another officer of the Southern Recreation Corp., who, along with Mr. Swift was in court representing the corporation, if he could have a job, and was told that "he would see about it." Plaintiff said he did not know which of the

two it was that he talked to, and did not now know which of the two men was Mr. Swift and which was Mr. Anderson. Plaintiff also testified that he and several other boys helped unload the go-carts, and worked all afternoon and evening at assembling those which were not already assembled and being used on the track. He said the boys so working were permitted to ride free in the go-carts as compensation for their work, said rides taking place on the concrete floor of the shed where they were working. His testimony is corroborated by that of Charles Pounds, Claude Wilson, and Andy Wood, boys who were also helping to unload and assemble the go-carts and who were riding them in the shed. Plaintiff's testimony, in this regard, is also corroborated to some extent by the testimony of Mr. Swift, himself, whose testimony to that effect, we quote as follows:

"Q 27 How did you transport these vehicles down here, how did you bring them?

"A We brought them down here on a trailer, on a rented trailer hooked behind Mr. Anderson's car.

"Q 28 Pulled by a private automobile?

"A Yes, sir.

"Q 29 And when you got here, what did you do with these vehicles?

"A We parked the trailer out there on that apron, and several of the boys helped unload them and—

"Q 30 And what did you do with them?

"A The two that we had ready to go on the track, we made preparations to get them into operation, the other two—"

Plaintiff testified that he worked at assembling go-carts until about 11:00 or 11:30 P.M. Saturday, August 6, 1960, at which time his father came for him. He said that he returned on Sunday afternoon and continued along the same lines until late that afternoon, when he and Andy Wood, who had helped him assemble one of the go-carts, were trying it out, with Andy Wood driving and he, plaintiff, riding on the bar at the rear of same, at which time he said he was adjusting the carburetor. It was at that time that his clothing became entangled in a sprocket on the go-cart, and his leg seriously injured.

As stated above, the jury returned a verdict in favor of the plaintiff for. $7,500, which on motion for new trial was reduced by the trial judge, by way of remittitur, to $6,000, for which sum judgment was entered. Prior to the swearing of the jury, counsel for defendants had moved for a mistrial, based on the contention that counsel for plaintiff had, on voir dire, asked prospective jurors questions which indicated that the defendant might be protected by liability insurance, whereas such was not the case, because defendant's insurance policy expressly excluded liability for employees hired in violation of the child labor law. Said motion for mistrial was overruled. At the conclusion of plaintiff's proof, and again at the conclusion of all of the proof, defendant moved for a directed verdict. Same was sustained as to plaintiff's father, who had brought suit for medical expenses and loss of services, but was overruled as to the minor plaintiff. After defendants' motions for new trial had been overruled, they perfected their appeal in error to this court, where they have filed three assignments of error.

By Assignment of Error I, defendants seek a reversal on the ground that the trial judge erred in permitting

plaintiff's counsel to question jurors, on their voir dire, as to whether they were employed by liability insurance companies or owned stock in or had any interest in any liability insurance companies, and because defendants' motion for a mistrial on that ground was overruled.

By Assignment of Error II, defendants contend that their motion for directed verdict made at the conclusion of all the proof should have been sustained.

By Assignment of Error III, defendants contend that they cannot be held liable for plaintiffs injuries caused by violation of sections 50-711 and 50-712 T.C.A., because, on the undisputed proof, plaintiff was never employed by defendants, and that said statutes should be held unconstitutional if construed as making mere permission of plaintiff to work the predicate for liability.

We will dispose of these questions in the order presented.

■ The specific questions asked of the prospective jurors, on voir dire, are not preserved in the record, but the bill of exceptions does disclose that counsel for defendants, in making the motions for mistrial, stated "The plaintiff's attorney has asked the members of the jury panel, and members of the jury the usual questions asked in automobile accident cases about their interest in— * * *—asked the usual questions about their interest in insurance companies, whether they work for such companies or have any stock or interest in them." In the discussion which followed, which is copied into the bill of exceptions, no specific statement appears from counsel of plaintiff as to just what questions he had asked; but it is apparent that no denial was made as to his having asked such questions.

This motion for mistrial, addressed itself, in our opinion, to the sound discretion of the trial judge, and we cannot say, on the record before us, that he abused his discretion in denying that motion. In the recent case of Woods v. Meacham (1959), 46 Tenn. App. 711, 333 S. W. (2d) 567, the opinion in which case was written by the author of his opinion, we reviewed every reported Tennessee case bearing on the question of injection of insurance into tort litigation. From our opinion in that case, we quote as follows:

"The rule which we deduce from the above quoted authorities, and which we think applicable to the facts of the instant case, is that where the injection of the question of liability insurance into the case was made deliberately or intentionally by counsel for plaintiff, or where counsel for plaintiff persisted in the matter after the court had sustained an objection, a reversal should be granted; and especially so where, as in the instant case, the amount of the jury's verdict indicates that the improper conduct had the desired effect." Woods v. Meacham, 46 Tenn. App. 732-733, 333 S. W. (2d) 577.

Also, from our opinion in that case we quote:

"In Seals v. Sharp, 31 Tenn. App. 75, 80, 212 S. W. (2d) 620, 622, McAmis, J. (now Presiding Judge) said, after his listing of previous cases on the subject:

" 'While a number of these cases hold, at least by inference, that if a plaintiff or his counsel persist in seeking to improperly influence the jury by voluntary references to liability insurance a mistrial should be granted, in none of them was a judgment

actually reversed except in Mfg. Co. v. Woodall (115 Tenn. 605, 90 S. W. 623), decided before the Act of 1911, now Code section 10654 (sec. 27-117) T.C.A., referred to above.' " Woods v. Meacham, 46 Tenn. App. 736, 333. S. W. (2d) 578; Seals v. Sharp, 31 Tenn. App. 75, 80-81, 212 S. W. (2d) 620.

In Potts v. Leigh, 15 Tenn. App. 1, DeWitt, J., speaking for the Court of Appeals, Middle Section, said:

"This question of error in allowing evidence that defendant had liability insurance to be brought before the jury arises frequently in such actions, and calls for treatment according to the circumstances of each case." Potts v. Leigh, 15 Tenn. App. 5.

▮ In the instant case, there was no evidence of liability insurance, nor of the absence of. such insurance. The questions asked of prospective jurors, on their voir dire, may have suggested to these jurors that defendants had insurance; but, in our opinion, this falls far short of constituting evidence to that effect. As we understand the law on the subject, counsel for plaintiff was entitled to ask such questions, on voir dire examination, for the purpose of determining whether or not they would exercise their right of peremptory challenge on any particular jurors, based on the answers given. If asked for that purpose, they were within their rights, because it is generally understood and believed that a man who works for a liability insurance company or who has stock in any such company, is likely, because of that circumstance, to look more favorably on the side of a defendant in a damage suit.

▮ In the instant case, after the motion for a mistrial had been overruled, the record discloses that after the

jurors were brought back into the courtroom, the following occurred:

"THE COURT: Jurors, before you are sworn, there is a matter I want to explain to you so that you will understand it thoroughly. Now this is a suit between individuals and no other person or company has any part to this suit. The only way the suit can be tried is, as a suit between individals, and you gentlemen— ladies and gentlemen must understand that these are the parties in dispute and no one else is involved in the suit. Now some of the questions asked you on your qualifications might have caused you to think something else; that is not true. The only thing for you to consider is a suit between individuals. Can you try this as a suit between individuals and not allow anything else to enter into your considerations, can you all do that?

The jurors answered in the affirmative.

"THE COURT: And you will do that, if selected?

The jurors answered in the affirmative.

"THE COURT: Is there any other question you gentlemen want to ask them?

Counsel indicated no further questions.

"THE COURT: Mr. Clerk, you will swear in the jury.

Jury sworn by the clerk."

Counsel for defendants contend that this preliminary charge by the court was insufficient to prevent his being put in error for denying the motion for a mistrial. We cannot agree with this contention, nor can we say, on the

record before us, that the learned trial judge abused his discretion in this matter. Assignment of Error I is, accordingly, overruled.

■ With reference to whether or not defendants' motion for a directed verdict made at the conclusion of all the proof should have been granted, we think the testimony of plaintiff, himself, was amply sufficient to take the case to the jury, and, especially so, when he was corroborated by the testimony of several other boys who, like him, had been permitted to work for defendant in unloading and assembling the go-carts. Indeed, the testimony of defendant Swift, himself, that "We parked the trailer out there on that apron and several of the boys helped unload them", even without corroboration of plaintiff by his companions, would have justified submission of the issues of this cause to the jury.

■ It is the contention of counsel for defendants, however, that defendants could be held liable in the instant case, under the allegations of plaintiffs' declaration only if sections 50-711 and 50-712 T.C.A. were violated by employment of plaintiff in violation of those Code sections, and that it was conceded by counsel for plaintiffs in arguing the motion for a directed verdict, that plaintiff had never been employed by defendants. We cannot agree with this contention. Use of the phrase, "No minor under sixteen (16) years of age shall be employed, *permitted, or suffered to work*" (Emphasis added), which appears twice in section 50-711 T.C.A., and the phrase, "No minor under eighteen (18) years of age shall be employed, *permitted or suffered to work*", in section 50-712 T.C.A., causes us to conclude that the mere permitting or suffering of plaintiff to work, as he was working on Saturday, August 6, 1960 and August 7, 1960, at the

time he was injured, constitutes a violation of said child labor statutes, even though plaintiff was never formally employed. But, counsel for defendants contend that if the Code sections referred to are so construed, they should be held unconstitutional. That question is presented by Assignment of Error III, and will be separately discussed. Assignment of Error II is, accordingly, overruled.

■ By Assignment of Error III, defendants contend that if the mere permitting or suffering of plaintiff to work around defendants' place of business constitutes a violation of sections 50-711 and 50-712 T.C.A., said Code sections should be held to be unconstitutional. In making this contention, counsel for defendants point out that the Code sections in question are mere codifications of provisions in Chapter 201 of the Public Acts of 1949, and that the language referred to is not covered by the caption of that Act. The caption of Chapter 201 of the Public Acts of 1949 is quoted in the brief filed on behalf of defendants and is as follows:

"AN ACT to regulate the employment of minors in industry in this State; to prohibit the employment of minors of certain ages in certain industries and businesses; to provide for the issuance of employment certificates for minors and to regulate the same; to authorize the issuance of age certificates; to define the legal effect to be given such employment and age certificates; to provide for the issuance of regulations by the Department of Labor relating to such certificates; to authorize the Department of Labor to revoke any such certificates and to enforce the various provisions of this Act; to make a violation of the provisions of this Act a misdemeanor

and to provide the penalty therefor and to repeal Sections 5314, 5316, 5317, 5318, 5319, 5320, and 5321 of the Official Code of Tennessee of 1932 upon the effective date of this Act.''

In our opinion, the above quoted caption is amply sufficient to justify the inclusion in the Act of a prohibition against suffering or permitting a minor to work, which is germane to the general subject of legislation covered by said caption. It, therefore, follows that, in our opinion, the contention that the provisions of said Act as carried forward into sections 50-711 and 50-712 T.C.A. are unconstitutional, is without merit. Assignment of Error III is, accordingly overruled.

All of appellants' assignment of error will be overruled, and the judgment of the lower court will be affirmed. Judgment will be entered in this court in favor of plaintiff John Wimberly, Jr., suing by next friend, John Wimberly, Sr., against the defendants C. B. Swift and Southern Recreation Corporation for $6,000, together with interest thereon from April 6, 1962, the date of overruling the motion for new trial in the lower court, together with the costs of this cause, and against their sureties on the appeal bond.

Avery, (P. J. W. S.), and Carney, J., concur.