RONALD GABIN, AN INFANT BY HIS GUARDIAN *AD LITEM*, NATHAN GABIN, ROSLYN GABIN AND NATHAN GABIN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. SKYLINE CABANA CLUB, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued September 24, 1969—Decided October 28, 1969.

*Mr. Lewis M. Holland* argued the cause for plaintiffs-appellants (*Messrs. Warren, Chasan, Leyner & Holland,* attorneys; *Mr. Arthur N. D'Italia* on the brief).

*Mr. Aaron Dines* argued the cause for defendant-respondent (*Mr. Philip M. Lustbader,* attorney).

The opinion of the court was delivered by

PROCTOR, J. The trial court dismissed the plaintiffs' negligence action at the close of their case. The Appellate Division affirmed and we granted certification. 53 *N. J.* 577 (1969).

Plaintiffs' proofs showed that in the summer of 1965, Ronald Gabin, then 13 years old, was enrolled by his parents

at the defendant Skyline Cabana Club Day Camp. The camp's activities were conducted six days a week, excluding Mondays. Normally these activities were the same as those of any other day camp, but on August 15 the camp grounds were devoted to a carnival or fair, the profits of which were to be given to a charitable organization. On this day groups of campers met with their counselors to operate booths for the various games and events which had been planned. Ronald's group had constructed a booth where the customers were to drive nails into a block of wood, the object apparently being to drive a nail in with the fewest possible blows. Ronald operated the first shift at this booth which lasted about a quarter of an hour. After finishing his turn he walked around the grounds trying the other games. Eventually he arrived at a booth containing a "snow cone machine," described as an electrically powered device in which pieces of ice were reduced to small shavings by whirling blades. After being emitted from a nozzle on the machine these shavings were put in paper cups, covered with a flavored syrup and sold to customers over a counter or table. The machine was operated by Edward Resnick, a fourteen-year-old counselor at the camp.

Ronald entered the booth and began helping Resnick by handing him paper cups to be filled with the ice shavings. After about fifteen or twenty minutes, some ice became jammed in the machine causing it to stop. Resnick tried to dislodge the ice by poking a stick into the top of the machine but his efforts were unsuccessful. Ronald then sought to unjam the machine by putting his finger into the nozzle. When he did so, the ice came free, the blades began to whirl, and the tip of his finger was cut off. Ronald testified that no one had warned him to stay away from the machine.

At the trial, the plaintiffs, Ronald and his parents *per quod,* relied solely on defendant's alleged violation of *N. J. S. A.* 34:2–21.17, a section of the Child Labor Law (*L.* 1940, c. 153, § 17; *N. J. S. A.* 34:2–21.1 *et seq.*). The section pro-

vides in pertinent part: "No minor under 16 years of age shall be employed, permitted or suffered to work in, about, or in connection with power-driven machinery." Plaintiffs expressly limited themselves to an action based on breach of the statute in order to preclude the defense of contributory negligence. See *Volpe v. Hammersley Mfg. Co.*, 96 *N. J. L.* 489 (*E. & A.* 1921); *Feir v. Weil and Whitehead*, 92 *N. J. L.* 610 (*E. & A.* 1919); *Lesko v. Liondale Bleach, Dye & Print Works*, 93 *N. J. L.* 4 (*Sup. Ct.* 1919). *Cf. Soronen v. Olde Milford Inn, Inc.*, 46 *N. J.* 582, 591 (1966). In dismissing plaintiffs' action the trial court held that *N. J S. A.* 34:2–21.17 applied only to minors who were employed and, since it was conceded that Ronald was not defendant's employee, he was not entitled to sue under the statute. In an unreported opinion the Appellate Division affirmed, reasoning that the title and preamble of the 1940 Law, as well as the statement attached to the original bill, showed a legislative intent to limit the statute's scope to the employment of minors.

 Initially, it is clear that a violation of the statutory provision here involved itself constitutes negligence and results in liability if the violation is the proximate cause of plaintiff's injuries. See *Feir v. Weil and Whitehead, supra,* at 612–13.

 The statute uses the phrase "employed, permitted or suffered to work." There is nothing in the title or the preamble of the Law which indicates that the Legislature intended to restrict the broad scope of these terms. The title refers to the general subject of "child labor."[1] "Labor" is not a term which necessarily encompasses compensatory employment. The preamble speaks of both "employment" and

---

[1] "AN ACT to limit and regulate child labor in this State; to provide for examinations and inspections under the provisions of this act; to provide for the enforcement of this act and regulations made thereunder; to prescribe penalties for the violation thereof; and to repeal other acts." L. 1940, c. 153 p. 331.

"work."[2] It is clear that "work," as used in the Law, has a broader meaning than "employment." The penal section of the Law, *N. J. S. A.* 34:2–21.19, encompasses both "employment" and the broader term "work"[3] To give full meaning to these terms, they must be given disjunctive or alternative significance. But of greater importance is the language of *N. J. S. A.* 32:2–21.17 itself which enjoins: "No minor under 16 years of age shall be employed, *permitted or suffered to work* in, about, or in connection with power-driven machinery." (emphasis added). If the Legislature intended to limit this section to cases where a minor was "employed," it would not have included the phrase "permitted or suffered to work." It is a cardinal rule of statutory construction that full effect should be given, if possible, to every word of a statute. We cannot assume that the Legislature used meaningless language. *Hoffman v. Hock*, 8 *N. J.* 397, 406–407 (1952); 2 *Sutherland, Statutory Construction* § 4705 (*3rd ed.* 1943). In *Swift v. Wimberly*, 51 *Tenn. App.* 532, 370 *S. W. 2d* 500 (1963), *cert.* den. (*Tenn. Sup. Ct.* 1963), a Tennessee court construed a statute similar to ours.[4] Although the infant plaintiff in that case was never employed, the defendant allowed him to work on gasoline propelled go-carts in a recreation center. In ruling that

---

[2] "WHEREAS, the employment of minors in occupations or pursuits wherein they are subject to exploitation is contrary to public policy; and

"WHEREAS, Such employment as will impede the progress of minors, prove a detriment to their health, or interfere with their education should be abolished in the State of New Jersey; and

"WHEREAS, The work of minors in occasional and nonrecurrent occupations when not required to attend school is not thus detrimental, nor will it, when properly supervised by parent or guardian, constitute such exploitation; therefore," *Id.*

[3] *N. J. S. A.* 34:2–21.19 provides in part: "Whoever employs or permits or suffers any minor to be employed *or* to work in violation of this act * * *" (emphasis added).

[4] The statute *Tenn. Code Ann.* § 50–711 provided: "No minor under 16 years of age shall be employed, permitted, or suffered to work in or in connection with any manufacturing or mechanical establishment * * *."

the statute was violated, the court upheld the plaintiff's right to recover after he had injured his leg in the gears of a cart. The court emphasized that the words "permitted or suffered to work" clearly showed that the Act covered nonemployment situations even though the Act's title referred only to employment. *Id.* at 543–544. 370 *S. W. 2d* at 505–506. And in *Ludwig v. Kirby,* 13 *N. J. Super.* 116, 122 (1951) the Appellate Division, though holding that the power driven machinery was not the proximate cause of the infant plaintiff's injury, observed that our statute protects minors irrespective of whether there is an employment relationship.

 Finally, we regard the introducer's statement attached to the original bill which later became the Child Labor Law (L. 1940, c. 153; *N. J. S. A.* 34:2–21.1 *et seq.*) as lacking significance. Although the statement refers to the "employment" of minors, the section of the bill dealing with hazardous activities (now *N. J. S. A.* 34:2–21.17) was amended in the Senate before final passage to exclude "work done by pupils in public or private schools of New Jersey, under the supervision and instruction of officers or teachers of such organizations or schools."[5] *Senate Amendment to Committee Substitute for Assembly Bill No.* 174, adopted June 10, 1940. Clearly a pupil in school is not an employee. Nevertheless, the Legislature deemed it necessary to specifically exclude supervised school activities from the section's coverage. This amendment demonstrates that the Legislature was aware of the statute's application to nonemployment situations. Although statements appended to bills may be useful in determining legislative intent, a considered judgment must be exercised in determining the weight to be given to them. *Howard Savings Inst. v. Kielb,* 38 *N. J.* 186, 195 (1962); *Morris & Essex Invest. Co. v. Director of Div. of Taxation,* 33 *N. J.* 24, 34 (1960). We

---

[5] In 1957 the section was amended, *inter alia*, to substitute the words "such organizations or" for "the" preceding "schools." L. 1957, c. 131, at p. 511, §1.

can attach no significant weight to the statement here in view of the bill's subsequent amendment before its final passage.

We conclude that the title of the Child Labor Law, its preamble, and the statement attached to the original bill are but general statements of policy and do not detract from the plain meaning of the language of *N. J. S. A.* 34:2–21.17 which provides protection for minors who are "permitted or suffered to work in, about, or in connection with power-driven machinery."

Although the broad policy behind the Child Labor Law is to prevent the economic exploitation of minors, the scope of that section dealing with the use of power driven machinery shows that the Legislature was also concerned with the safety of children. Thus, there is a second policy of protecting children who are too young to appreciate the dangers which arise out of working "in, about or in connection with power-driven machinery."[6] See *Hetzel Jr. v. Wasson Piston Ring Co.,* 89 *N. J. L.* 201, 204 (*E. & A.* 1916) construing the Factory Act, *L.* 1904 *c.* 64, the precursor of the present Child Labor Law. It is for this very reason courts have held that, when the section is violated, a child is not chargeable with contributory negligence provided the work is the proximate cause of his injury. See *Volpe v. Hammersley, supra,* 96 *N. J. L.,* at 490. *Cf. Soronen v. Olde Milford Inn, Inc., supra,* 46 *N. J.,* at 591. The dangers arising from this work are in no way abated where the child is merely permitted or suffered to work rather than employed to work.

It is immaterial that, on the day of the infant plaintiff's injury, the camp was conducting a fair the proceeds of which were to be given to charity. *N. J. S. A.* 34:2–21.17 is not limited to children working in connection with *com-*

---

6 This section of the Law also catalogues other hazardous activities prohibited for persons under 18 years of age, *e. g.,* working with paints, poisonous acids or dyes, benzyl, explosives, inflammables.

*mercial* activities. While various provisions of the Child Labor Law are restricted to work in connection with "any gainful occupation" (*N. J. S. A.* 34:2–21.2, 21.3, 21.7), this phrase is omitted in *N. J. S. A.* 34:2–21.17. This omission, in our view, shows a legislative intent to provide the statute's protection to children irrespective of whether their work was performed in connection with any gainful occupation.

There is no doubt that the management of the camp was responsible for the conduct of its counselor, Resnick, who was entrusted with the operation and control of a power driven ice shaving machine, particularly when he himself was under the statutory minimum age to operate the machine. We are not called upon to decide the scope of the term "power-driven machinery." It may well be that some power driven machines are not within the legislative contemplation, but defendant does not contend that the machine here is not covered by the statute.

Since this case was dismissed at the conclusion of their proofs, we must look at the record in a light most favorable to the plaintiffs. From our examination we conclude that the plaintiffs had offered evidence from which a jury could find that the operator of the ice shaving machine permitted or suffered the infant plaintiff to unjam the machine and that this conduct proximately caused his injury. Therefore, the dismissal at the end of plaintiffs' case was error.

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—NONE.