STATE OF NEW JERSEY, PLAINTIFF, v. MARY LOU GREENBERG AND SANDRA LINES, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided November 6, 1980.

*Marc M. Galen* for defendants (*Courter, Kobert & Pease,* attorneys).

*Mark M. Cheser,* Assistant Prosecutor, for plaintiff (John H. Stamler, Union County Prosecutor, attorney).

LONG, J. S. C.

This case involves an interpretation of the provisions of *N.J. S.A.* 2C:33–7. It arises out of a judgment of conviction of defendants Mary Lou Greenberg and Sandra Lines for violation of that statute, entered by the Elizabeth Municipal Court. This is an appeal *de novo* on the record.

The following testimony was elicited at trial: At about 9:30 a. m. on May 23, 1980 Sgt. William Schneider of the Elizabeth Police Department was on a security detail at the State Unemployment Office in Elizabeth. At that time he was approached

by an unidentified woman who said that another woman was "badgering" her outside the unemployment office. He proceeded outside and observed defendants Mary Lou Greenberg and Sandra Lines with leaflets in their hands. According to Sgt. Schneider, Mrs. Greenberg, who was situated near the exit to the unemployment office, was engaged in an argument with a group of five to seven men about something "political." She was talking about the Socialist Revolution and the men were responding that "she should go to Cuba." Schneider said that the discussion was becoming "heated" and he "felt it was going to become hostile." He asked Mrs. Greenberg to move off the property; after continuing the argument, she finally did by moving down toward the front of the building where Mrs. Lines was standing. By this time, according to Schneider, the group of men had grown to ten in number and several participants were yelling and saying that Schneider should lock defendants up and that defendants were Communists. Schneider said that, in his opinion, "it was creating a hazard." "To eliminate the hazard mainly to themselves and to make my job easier" he asked defendants to move to the other side of the building. Schneider said that Mrs. Lines then used obscene language toward him while addressing the group (an offense with which neither defendant is charged), that both defendants refused to move, and that at that time he placed them under arrest. According to Schneider, Mrs. Greenberg had been obstructing the access to the entrance and exit of the claimants' room. On cross-examination Schneider conceded that actual access to the unemployment office was not obstructed at all but that "proper access," in his judgment, was obstructed insofar as people had to walk on the gravel and around cars to get in.

Defendants version of the incident is at variance from Officer Schneider's in several respects. Mrs. Lines testified that on May 28 she and Mrs. Greenberg went to the unemployment center as they had done regularly, once and sometimes twice a week for over a year. According to Mrs. Lines, Mrs. Greenberg was involved in an animated political discussion with a group, which

was not at all rancorous. She stated that Officer Schneider came out of the building and asked Mrs. Greenberg to move (which she did) and that the officer made some nasty remarks to Mrs. Greenberg. Mrs. Lines testified that she was on the sidewalk and that there was plenty of room for people to walk around her, but that, in fact, it was where the officer was standing at the corner of the building that people had no room to pass and had to walk on the gravel. She stated that the officer spoke to her about political matters for 15 or 20 minutes, after which he walked away. When he returned, two police cars pulled up. She said that at that time she was surrounded by four or five policemen who said, "Are you going to move?" When she asked why, she says she was placed under arrest.

Mrs. Greenberg testified that upon arrival at the unemployment office on May 28 she became involved in a peaceful political discussion with several people near the exit door of the office. She said she saw the officer coming and moved out on to the public sidewalk. She continued her discussions and observed the officer speaking to Mrs. Lines. As she moved down the public sidewalk toward the adjacent check-cashing establishment, she saw two police cars. The police exited the cars and surrounded Mrs. Lines, and when she questioned them, according to Mrs. Greenberg, they said "You'd better leave or you're going to be arrested too." When Mrs. Greenberg tried to alert the bystanders regarding the predicament of Mrs. Lines, Mrs. Greenberg says that she, too, was arrested. Both defendants offered a diagram of the scene which showed avenues of ingress and egress to the office other than that testified to by the officer. In addition, Mrs. Greenberg and Mrs. Lines each denied that the group was hostile or threatening.

As has been observed previously, there is a difference between the version of the incident related by the officer and that related by defendants. In this connection the State has suggested that the real issue in this case is a credibility issue which should be resolved in favor of Officer Schneider since this court must give due deference to credibility determinations made by

the municipal court judge. Even accepting the State's version of what occurred as entirely true, it is the opinion of this court that the State has failed to sustain burden of proving a violation of the statute.

*N.J.S.A.* 2C:33–7 provides:

a. A person, who, having no legal privilege to do so, purposely or recklessly obstructs any highway or other public passage whether alone or with others, commits a petty disorderly persons offense. "Obstructs" means renders impassable without unreasonable inconvenience or hazard. No person shall be deemed guilty of recklessly obstructing in violation of this subsection solely because of a gathering of persons to hear him speak or otherwise communicate, or solely because of being a member of such a gathering.

b. A person in a gathering commits a petty disorderly persons offense if he refuses to obey a reasonable official request or order to move:

(1) To prevent obstruction of a highway or other public passage; or

(2) To maintain public safety by dispersing those gathered in dangerous proximity to a fire or other hazard.

An order to move, addressed to a person whose speech or other lawful behavior attracts an obstructing audience, shall not be deemed reasonable if the obstruction can be readily remedied by police control of the size or location of the gathering.

Succinctly stated, the purpose behind this statute is to prohibit the offense of obstruction while balancing First Amendment guarantees of freedom of speech and assembly against the need for public safety measures under appropriate circumstances. In order to effectuate this balance, the act defines obstruction but provides that a person is not guilty of obstruction merely because a group gathers to hear him speak, or because he is a member of a group gathered to hear another speak. The statute goes on to establish the relative obligations of private citizens and the police in public safety terms, when an obstruction occurs. A person must obey a reasonable order to move to prevent obstruction or maintain public safety if he is a part of a gathering dangerously close to a fire or other similar hazard. At the same time, an order to move directed to a person whose speech attracts an obstructing audience will not be considered reasonable if the obstruction can be remedied in a less restrictive way. This is the backdrop upon which the charges against the defendants must be viewed.

■ Turning first to the issue of reckless obstruction, it is evident that this was not the reason behind Officer Schneider's arrest of defendants. The officer forthrightly admitted that he asked defendants to move and ultimately arrested them, not because they were obstructing access to the unemployment office but because the political discussion in which defendants were engaging was becoming heated, and because he wished to make his job easier. According to Officer Schneider, the discussion itself was causing a hazard and this was the basis for the arrest. The only testimony about obstruction from the officer was his admission that access to the unemployment office was not obstructed at all, but that his concern was with people having to walk on the gravel which was not, to him, "proper access." This testimony, taken in light of an uncontroverted diagram offered by defendants to show other available means of access to the unemployment office, falls far short of what would be necessary to establish an obstruction under the statute. But even if this were not so, there is no question but that defendant had moved from the position of alleged obstruction, according to the officer's own testimony, prior to the time of the arrest. All of this, viewed in the face of the officer's avowed expression of the real reason behind his arrest of defendant, clearly establishes that there was no obstruction in this case and that obstruction is simply not an issue.

This finding should end the need for further analysis since the entire act in question is bottomed on the existence of an obstructing person or gathering. Absent such an obstruction none of the provisions of the act even come into play and obviously cannot undergird a conviction of defendants.

■ Notwithstanding the clear meaning of the act, the State has suggested that even absent an obstruction, the statute provides an alternate basis for conviction. This argument is based on the officer's testimony that defendants speech to the gathering was becoming heated and was causing a hazard in itself. In support of its position the State invokes *N.J.S.A.*

2C:33–7(b)(2), which provides that a person in a gathering commits an offense if he refuses to obey a reasonable request to move: "to maintain public safety by dispersing those gathered in dangerous proximity to a fire or other hazard." But this section of the act, by its very terms, cannot apply since the gathering was not near a fire or other hazard, but was, to the officer, the hazard itself. There is absolutely, no grammatical or common sense way to read the act to support the State's theory. *N.J.S.A.* 2C:33–7(b)(2) expresses a single, integrated idea which is simply not capable of being broken down into separate theories to underpin guilt. Indeed, what is clearly prohibited is the refusal of persons in a group who are *dangerously near* a fire or a similar occurrence to move, upon the request of an appropriate official where they are, for example, hindering rescue efforts. That is simply not the case here.

What the State seeks is to have the word "hazard" read out of context and independent of its antecedent language so as to be capable of being applied to the facts of this case. In addition to flying in the face of the common sense of the act, this interpretation also violates several well established rules of statutory construction. For example, ordinarily the coupling or association of words denotes an intention that they should be understood in the same sense. *Boileau v. DeCecco*, 125 *N.J.Super.* 263 (App.Div.1973), aff'd *per curiam* 65 *N.J.* 234 (1974); *Health Dep't v. Sol Schnoll Dressed Poultry Co.*, 102 *N.J.Super.* 172 (App.Div.1968). Here the State seeks to apply an opposite rule and have the word "hazard" interpreted as though the rest of the language of the phrase did not exist.

Similarly, the State's construction of the act reads out of it entirely the phrase, "in proximity to," in connection with the word "hazard." Again, the opposite rule of construction normally applies and full effect should be given to every word of a statute. It is never assumed that the Legislature used meaningless language. *Gabin v. Skyline Cabana Club*, 54 *N.J.* 550 (1969). Here, the State's interpretation of the act mandates such an assumption, and cannot stand.

■ At the heart of this case is the fact that this statute is neither ambiguous nor obscure. The only obscure thing about it is the State's torturous interpretation of the word "hazard." In the absence of ambiguity it is this court's obligation to glean the intent of the Legislature from the words themselves and to construe the act so as to apply that intent. *Marsh v. Finley*, 160 *N.J.Super.* 193 (App.Div.1978); *Gangemi v. Berry*, 25 *N.J.* 1 (1957). Under such an application, and for the reasons previously expressed, the State's theory must be rejected outright.

■ Moreover, even if it were possible to fairly interpret *N.J.S.A.* 2C:33–7(b)(2) to reserve power to the police to move a gathering which constitutes a "hazard" in itself (and I do not believe that such an interpretation of this particular statute is viable for the reasons expressed above), there was absolutely no proof to support the conclusion that defendants and their audience constituted any sort of a "hazard" whatsoever. No suggestion of endangerment of the public safety was raised beyond Officer Schneider's conclusory statements that the gathering was becoming heated, that he wished to protect defendants and that he wished to make his own job easier. None of these considerations would legitimatize his order for defendants to move on any kind of a public safety theory.

Finally, there is no suggestion in the testimony of Officer Schneider that he made any effort to remedy the situation in any way short of ordering defendants to move. In fact, he directly testified that such other action would have been undertaken by him subsequently. Under the circumstances, even if the State had been able to sustain its theory up to this point (which it did not), the statute by its very terms renders the officer's order unreasonable for failure to take available and less restrictive action prior to requiring defendants to move. Such an order could not form the basis of a conviction under the act.

For the foregoing reasons I find that the State has failed to sustain its burden of proof that defendants violated *N.J.S.A.* 2C:33–7 and accordingly find defendants not guilty.