THE STATE OF NEW JERSEY v. IRON OXIDE CORP., FRANK A. SULLIVAN, JOSEPH BISHOP, ROBERT HAWKINS, ROBERT BATTLE, PERK CHEMICAL CO., INC., RAY ROTHSCHILD, RALPH BELL, KEITH WHITE, CHEMLIME CORP., ROBERT BYRNES, AND GEORGE BALBEN, DEFENDANTS.

Superior Court of New Jersey
Law Division Criminal
Union County

Decided December 17, 1980.

*Lawrence G. Welle,* Deputy Attorney General, for the State of New Jersey (*John J. Degnan,* Attorney General, attorney).

*Richard Levin* for defendant Balben (*Amster & Levin,* attorneys).

*Leigh R. Walters* for defendants Bell and White (*LaCorte, LaCorte & Walters,* attorneys).

*George Gelman* for defendant Brynes (*Rosen, Gelman & Weiss,* attorneys).

*Joseph M. Finnin* for defendant Chemline Corp. (*Lowenstein, Sandler, Brochin, Kohl & Fisher,* attorneys).

*John A. Brogan* for defendants Perk Chemical & Rothschild (*Walder, Steiner & Sondak,* attorneys).

*Edward N. Fitzpatrick* for defendants Iron Oxide Corp. and Sullivan.

*Jack L. Cohen* for defendant Bishop.

McKENZIE, J. S. C.

Defendants are charged under a 65 count indictment with various crimes involving the disposal of chemical wastes at the Elizabeth plant of defendant, Iron Oxide Corporation. The State claims that defendant trucking companies and their drivers transported the liquid waste to the Iron Oxide plant after receiving the same from various customers who paid defendants for its disposal. In disposing of the material, it is charged that

the defendant caused the same to be emptied into the waters of the Arthur Kill on which the property of the defendant Iron Oxide borders.

Among the charges are counts alleging a conspiracy to maintain a nuisance in violation of *N.J.S.A.* 2A:85–1. Defendants move to dismiss these counts, claiming that under the New Jersey Code of Criminal Justice the actions of defendants as alleged in these counts are no longer crimes.

The Code became effective September 1, 1979. The alleged conspiracies which are the subject of the indictment took place between April 1, 1973 and April 10, 1979. The overt acts alleged to have occurred after July 24, 1977, are governed by the New Jersey Water Pollution Control Act (*N.J.S.A.* 58:10A–1 et seq.) which became effective that date. Those occurring prior to that date, and the subject of this motion, are governed by *N.J.S.A.* 2A:85–1, which lists nuisances among the indictable common law offenses punishable as misdemeanors. This statute was repealed by the Code, *N.J.S.A.* 2C:98–2, and all common law crimes have been abolished unless specifically defined under the Code or some other statute. *N.J.S.A.* 2C:1–5(a).

The Code further provides that if the offense is no longer an offense under the provisions of the Code the prosecution of the charges shall be dismissed. *N.J.S.A.* 2C:1–1(c)(3). Defendants argue that under the Code, *N.J.S.A.* 2A:85–1 has been downgraded to a disorderly persons offense, pointing to *N.J.S.A.* 2C:33–12 as the statute correlative to *N.J.S.A.* 2A:85–1. 2C:33–12 provides:

A person is guilty of a disorderly persons offense when: (a) By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons; * * *

Under the Code conspiracy is defined as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he: (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) Agrees to aid such other person or persons in the

planning or commission of such crime or of an attempt or solicitation to commit such crime. *N.J.S.A.* 2C:5-2.

A crime is an offense for which a sentence of imprisonment in excess of six months is authorized. *N.J.S.A.* 2C:1-4(a). Any other offense is either a disorderly persons offense or a petty disorderly persons offense and therefore not a crime. *N.J.S.A.* 2C:1-4(b). Thus, defendants argue, since a violation of *N.J.S.A.* 2C:33-12 constitutes only a disorderly persons offense, a conspiracy to violate that statute is not a crime.

In opposing defendants' motion the state points to *N.J.S.A.* 2C:17-2(a) as the correlative statute. As enacted originally, that statute provided:

A person who, purposely or knowingly, causes an explosion, fire, flood, avalanche, collapse of a building, release of poison gas, radioactive material or any other harmful or destructive substance or otherwise causes widespread injury or damage, commits a crime of the second degree.

By enactment of Chapter 178 of the Laws of 1979 prior to the effective date of the Code, this section was amended to read as follows:

A person who, purposely or knowingly, unlawfully causes an explosion, flood, avalanche, collapse of a building, release or abandonment of poison gas, radioactive material or any other harmful or destructive substance, including but not limited to hazardous waste as defined in section 1 of P.L.1966, c. 99, (C.13:1E-38) and toxic pollutant as defined in section 3 of P.L.1977, c. 74, (C.58:10A-3), commits a crime of the second degree. A person who, purposely or knowingly, unlawfully causes widespread injury or damage in any manner commits a crime of the second degree.

The statute both before and after amendment bears the title "Causing or Risking Widespread Injury or Damage." From this and from a reading of the statute itself defendants urge that an essential element of the crime under section (a) is that the conduct must result in widespread injury or damage. The state concedes that no evidence of widespread injury or damage was submitted to the grand jury which returned this indictment and it does not claim that such consequences resulted here. If defendants' contention is well founded, the indictment must fall. *See State v. Wein*, 80 *N.J.* 491 (1979); *State v. Closter Village, Inc.*, 31 *N.J.Super.* 566 (Bergen County Ct.1954), *aff'd*, 18 *N.J.* 179 (1955).

The Legislature history of this statute and its amendment is quite sparse. The commentary to 2C:17-2 as originally enacted states:

> This section presents a new concept in American law. Our law contains a few *ad hoc* provisions, such as *N.J.S.* 2A:170-69.4 through 69.6 dealing with excavating near gas pipes and with use of explosives near gas pipes. See also *N.J.S.* 2A:88-1 (Tampering with, damaging, or making improper adjustments to air craft) and *N.J.S.* 2A:122-9 (Injuring fire alarm system; false alarms.) The Code generalizes these. It is patterned on European legislation dealing with activity creating a "common danger." Fire, dealt with by the law of arson, is the prototype of forces which the ordinary man knows must be used with special caution because of the potential for wide devastation. Modern legislation puts explosion, flood, poison gas, and avalanche in the same category, and modern technology development alerts us to possibilities of catastrophe in mishandling radio active material. Final Report of the New Jersey Criminal Law Revision Commission, Vol. II a. 207.

From the foregoing some doubt arises as to whether hazardous wastes and pollutants are included in the substances with which the statute was intended to deal. Hence the amendment to 2C:17-2 was designed to specifically include the dumping or disposal of chemical wastes such as those involved in the present case. In a statement accompanying the amendments, the Senate noted that "(t)he purpose of this amendment was to specifically include the dumping or abandonment of hazardous waste among prescribed (sic) activities." *Senate Judiciary Committee Statement on S-3203,* July 18, 1979 at 5-6. Similarly, the Assembly stated that "(i)n Section 29A the Assembly Judiciary Committee amendments to 2C:17-2 add hazardous wastes and toxic pollutants to the list of harmful or destructive substances, the unlawful release or abandonment of which is made a second degree crime." *Assembly Judiciary Law, Public Safety and Defense Committee Statement to Assembly No. 3279,* July 28, 1979 at 8.

It would appear that the Legislature in its effort to deal specifically with these harmful substances determined that this could be accomplished by amending 2C:17-2(a), bringing in these materials under the category of "common danger" mentioned in the commentary to the original statute. However, unlike "explosion, fire, flood, avalanche, collapse of a building, release of

poison gas, and radioactive materials", the release or abandon-
ment of hazardous wastes and toxic pollutants, although clearly
inherently dangerous to persons or property, would not necessar-
ily cause immediately detectable widespread injury or damage.
The "common danger" posed by the substances added was
perceived by the Legislature to be more insidious in character
than those originally specified.

In this connection it is noted that section (a) was amended to
proscribe the abandonment of dangerous materials as well as
their release. Unlike the release of dangerous substances, their
abandonment connotes (depending to some extent upon the
particular substance), a more static situation, not necessarily
resulting in actual injury and damage. Accordingly, the Legis-
lature, by omitting this element from the first sentence of
section (a), eliminated from the specific criminalization of the
unauthorized disposal of potentially harmful wastes and pollu-
tants any requirement that the conduct cause widespread injury
or damage. By adding the second sentence, the Legislature
intended in more comprehensive and general language to de-
clare as criminal *any* act committed purposely or knowingly
which unlawfully caused widespread injury or damage in any
manner.

That this is so is made clear by the omission in this second
sentence of such words as "other," "otherwise" or the like, in
referring to the element of widespread injury or damage, as
employed before the amendment when the section consisted of
only one sentence. Thus the original statute, after the specifica-
tion of occurrences and substances proscribed, declared as a
criminal a person who knowingly or purposely "otherwise causes
widespread injury or damage," unlawfully. The use of the term
"otherwise" assumes that the previously specified occurrences or
substances will cause widespread injury or damage. The sen-
tence added to the statute by the amendment declares it a crime
to cause the same "in any manner," if done knowingly or
purposely and unlawfully. If the Legislature had intended to
require widespread injury or damage as an element of the crime

defined in the first sentence, it is apparent the word "otherwise" would have been retained in some form in the second sentence.

It is true that sections (b), (c) and (d) apparently require, as does the second sentence of section (a), the element of widespread injury or damage or the risk of same. However these sections differ from the first sentence of section (a) in that sections (b) and (c) deal with reckless conduct and section (d) is applicable to situations where one fails to take reasonable measures to prevent or mitigate widespread injury or damage. Therefore, if these defendants were charged with only recklessly disposing of the waste, a showing of widespread injury or damage would be essential. Where as here, however, a more serious violation has occurred—the dumping of such products purposely or knowingly—the injury or damage factor is not present as a required element of the crime.

The court is therefore satisfied that the purposeful or knowing release or abandonment of chemical wastes, being harmful or destructive substances within the provisions of the statute need not be shown to have caused widespread injury or damage to constitute a crime under N.J.S.A. 2C:17–2(a). In effect the Legislature has provided that purposely or knowingly releasing or abandoning those substances unlawfully is a crime of the second degree, as well as any conduct which purposely or knowingly unlawfully causes widespread injury or damage.

In amending the statute the Legislature would have made their intent more readily ascertainable if the second sentence of section (a) was made a separate section. Further, retaining the title "Causing or Risking Widespread Injury or Damage" may be somewhat misleading in view of the omission of this element in the first sentence of section (a). However, such guidance to legislative interpretation cannot withstand the clear intent of the legislature once it has been ascertained. *Gabin v. Skyline Cabana Club*, 54 *N.J.* 550, 557 (1969).

It is recognized that the conduct prescribed by *N.J.S.A.* 2A:85–1 is a misdemeanor, punishable by a term of imprison-

ment of not more than three years, whereas violation of *N.J.S.A.* 2C:17–2 is a crime of the second degree, punishable by a maximum term of ten years. The conspiracy to commit such a crime is also punishable by imprisonment for ten years. *N.J. S.A.* 2C:5–4(a). Under the Code therefore the offense has been upgraded. Such action is clearly within the power of the Legislature, and with the recent and continuing burgeoning of the problem of disposal of chemical and other toxic wastes and pollutants, it can hardly be said that the Legislature was not acting within its discretion in so doing. *See Hutton Park Gardens v. Town Council of West Orange*, 68 *N.J.* 543 (1975).

In summary, this court finds as follows:

1. *N.J.S.A.* 2C:17–2(a) is the correlative statute to *N.J.S.A.* 2A:85–1.
2. The first sentence of *N.J.S.A.* 2C:17–2(a) is not limited by the provision in the second sentence of that paragraph, requiring as an element the causing of widespread injury or damage.
3. The conduct charged in the indictment as a violation of *N.J.S.A.* 2A:85–1 is therefore a crime under the Code of Criminal Justice.
4. A conspiracy to commit acts in violation of *N.J.S.A.* 2A:85–1 is still a viable offense under the laws of this state.

The motions to dismiss the indictment will be denied.