HAMILL, J.T.C.
There are two principal issues in this gross income tax case. The first is whether, in light of Baldwin v. Director, Div. of Taxation, 10 N.J.Tax 273 (Tax 1988), aff'd per curiam o.b., 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990), plaintiff is entitled to offset a 1988 installment sale gain with a capital loss carryover allowed in that year for federal income tax purposes. The second issue is whether plaintiff is entitled to the resident credit with respect to the installment sale gain received by the taxpayer and taxed by New Jersey in 1988 when the total gain was taxed by Pennsylvania in 1981.
The pretrial order set forth two additional issues, which should be mentioned even though plaintiff has not briefed them. The first is whether New Jersey can tax the installment sale gain at all when the entire gain was realized and recognized in 1981 while Mrs. Guzzardi was a resident of Pennsylvania. New Jersey can tax this gain because the installment at issue was not actually received until 1988, by which time plaintiff had taken up residence in New Jersey. As to individuals, domicile or residence provides a sufficient basis for taxing all income received during the taxable year without regard to its source. Lawrence v. State Tax Comm’n, 286 U.S. 276, 279-81, 52 S.Ct. 556, 557, 76 L.Ed. 1102, 1106 (1932); New York ex rel. Cohn v. Graves, 300 U.S. 308, 312-13, 57 S.Ct. 466, 467, 81 L.Ed. 666, 670 (1937); Hough v. Director, Div. of Taxation, 2 N.J.Tax 67, 72-74 (Tax 1980), aff'd, 4 N.J.Tax 528 (App.Div.), certif. denied, 87 N.J. 418, 434 A.2d 1092 (1981). *398 See James C. Smith & Walter Hellerstein, State Taxation of Federally Deferred Income: The Interstate Dimension, 44 Tax L.Rev. 349, 372-73 (1989). The second issue that plaintiff has not briefed is whether, assuming that the resident credit is not available, the denial of the credit is constitutional in the factual situation presented here. A brief discussion of the issue begins below, infra (opinion at p 407).
The facts have been fully stipulated and are as follows. In 1981 Tina Guzzardi and her husband owned a forty percent interest in a partnership. During 1981 when Mr. and Mrs. Guzzardi were Pennsylvania residents, the partnership sold two parcels of real estate receiving as consideration cash and notes secured by mortgages on the two properties. For federal income tax purposes the partnership elected to report the gains on the installment basis. Pennsylvania at that time did not recognize the installment method of reporting.[1] Consequently, for Pennsylvania personal income tax purposes, the partnership reported the entire gain on the sale of the two properties in 1981, and Mrs. Guzzardi and her husband reported their forty percent share of the entire gain on their 1981 Pennsylvania personal income tax return.
Subsequent to the 1981 sale, Mr. Guzzardi died; Mrs. Guzzardi succeeded to his interest in the partnership, and Mrs. Guzzardi’s interest in the partnership was liquidated. As part of the consideration received for her partnership interest, Mrs. Guzzardi received the two notes in respect of the properties sold in 1981. At some point prior to 1988, Mrs. Guzzardi moved to New Jersey.
In 1988 the two notes were paid in full. Mrs. Guzzardi’s 1988 installment, sale gain, reported for federal income tax purposes, *399 amounted to $272,043. She reported none of this gain on her 1988 New Jersey gross income tax return.
Mrs. Guzzardi’s 1988 federal income tax return included as well as the installment sale gain, a net capital loss amounting to $15,847 and a capital loss carry forward from prior years amounting to $155,035.
The assessment at issue is based on the Director’s inclusion of the 1988 installment sale gain, net of the 1988 net capital loss, for a net increase in gross income of $256,196 ($272,043 - $15,847). Plaintiff asserts that Mrs. Guzzardi was entitled (1) to offset the net gain of $256,196 with the capital loss carryover reported on her 1988 federal income tax return and (2) to claim the resident credit to the extent that the 1988 installment sale gain was taxed by Pennsylvania in 1981.
The statutory provision on which plaintiff relies in arguing that the capital loss carryover is allowable provides that New Jersey gross income includes:
[n]et gains or net income, less net losses, derived from the sale, exchange, or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes.
[N.J.S.A 54A:5-l.c.]
According to plaintiff, that section permits the deduction of capital loss carryovers because it adopts “in tota ... the federal scheme for taxation of capital gains which clearly ... permits the carry forward of capital losses.” In support of its argument, plaintiff relies on this court’s opinion in Baldwin v. Director, Div. of Taxation, supra.
In Baldwin, the court concluded that the reference in N.J.S.A. 54A:5-1.e to “the method of accounting allowed for federal income tax purposes” was not limited to accounting methods but extended as well to substantive provisions of the Internal Revenue Code recognizing (or not recognizing as was the case in Baldwin) gains and losses. 10 N.J.Tax at 285. If, as the court concluded in Baldwin, the reference to federal accounting methods incorporates the substantive disallowance of personal losses found in *400 I.R.C. § 165(c), the same accounting language must include the substantive rules of I.R.C. § 165(f) allowing a deduction for losses from sales or exchanges of capital assets, I.R.C. § 1212(b) defining the excess of a net capital loss over a net capital gain for the taxable year as a net capital loss for the ensuing year, and I.R.C. § 1211(b) limiting the deductibility of net capital losses.
The Director responds that no provision of the Gross Income Tax Act permits a deduction for capital losses incurred in a prior year, that N.J.S.A 54A:5-2 makes clear that only those losses incurred during the taxable year are deductible, and that the reference to federal income tax accounting methods in N.J.S.A. 54A:5-l.c goes no further than permitting the use of federal accounting'methods. The Director distinguishes Baldwin on the basis that federal accounting principles control the determination of gains but not losses because the latter are controlled by N.J.S.A 54A:5-2, which makes no reference to federal accounting methods.
The language of N.J.S.A 54A:5-2 supports the Director’s position. The provision reads in part: “Losses which occur within one category of gross income may be applied against other sources of gross income within the same category of gross income during the taxable year.” N.J.S.A 54A:5-2 (emphasis added). While the statute does not specify precisely that the income and losses that are to be offset must arise during the same taxable year, the phrase “during the taxable year” is superfluous unless it has that meaning. If the Legislature had intended that losses incurred in a prior year could be offset against income in the current year, it would have omitted the words “during the taxable year.” It must be presumed that the phrase “during the taxable year” has some meaning. See Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969). (“It is a cardinal rule of statutory construction that full effect should be given, if possible, to every word of a statute. We cannot assume that the Legislature used meaningless language.”). The only plausible meaning that can be attributed to the phrase is that the items of loss and gross income must occur during the same taxable year.
*401 Moreover, had the Legislature intended to allow losses from a prior year, it would have done so by including a specific provision to that effect. Income taxes are annual exactions imposing tax on some measurement of income for each taxable year. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348, 1352 (1934). Absent a statutory provision allowing a carryover of losses from a prior year, there is no basis for inferring such an allowance from a general term permitting “net gains” to be offset by “net losses”. Ibid. See Patten Fine Papers, Inc. v. Commissioner, 249 F.2d 776, 779-80 (7th Cir.1957). Under the Internal Revenue Code, for instance, it is only by virtue of I.R.C. § 1212(b) that individual taxpayers may deduct in the current year under I.R.C. § 165(f) a capital loss incurred in a prior year. Section 1212(b) provides in pertinent part:
If a taxpayer other than a corporation has a net capital loss for any taxable year—
(A) the excess of the net short-term capital loss over the net long-term capital gain for such year shall be a short-term capital loss in the succeeding taxable year, and
(B) the excess of the net long-term capital loss over the net short-term capital gain for such year shall be a long-term capital loss in the succeeding taxable year.
[I.R.C. § 1212(b).]
The Gross Income Tax Act contains no provision analogous to I.R.C. § 1212(b). Unless some other provision mandates the recognition of capital loss carryovers, plaintiffs argument must fail.
Plaintiff points to the reference in N.J.S.A. 54A:5-l.c to federal income tax accounting methods as providing the necessary authorization. According to plaintiff, as construed in Baldwin, the reference to federal income tax accounting methods incorporates all the substantive provisions of the Internal Revenue Code relating to gains and losses.
Plaintiffs argument proves too much. If plaintiff were correct, there would be no need for the additional provisions of N.J.S.A. 54A:5-l.c. The first of these provisions states that, “The term ‘net gains or net income’ shall not include gains or income from transactions to the extent to which nonrecognition is allowed for *402 federal income tax purposes.” There would be no need to specify that gains not recognized for federal income tax purposes are not recognized for New Jersey purposes if the same result had already been achieved by reference to “the method of accounting allowed for federal income tax purposes.” Nor would there be any need for the further provision in N.J.S.A 54A:5-l.c which excludes reorganization exchanges from the definition of “sale, exchange or other disposition.” Nonrecognition of gain or loss to individuals from reorganization exchanges is provided for by I.R.C. § 354(a), and reorganization exchanges are defined in I.R.C. § 368.
Nor for that matter would there be any need for N.J.S.A 54A:6-9 under plaintiffs view of the statute. That section provides for the deferral of gain on the sale of a principal residence and for a one-time exclusion of gain on the sale of a principal residence by an individual aged 55 or older. The corresponding provisions of the Internal Revenue Code are I.R.C. § 1034, providing for the deferral of gain on the sale of a principal residence, I.R.C. § 121 providing for a one-time exclusion of gain on the sale of a principal residence by an individual aged 55 or older.
The legislative history of the Gross Income Tax Act casts further doubt on plaintiffs argument. As originally introduced on March 10,1976, the Assembly Committee Substitute for Assembly No. 1513, which ultimately became the Gross Income Tax Act, included net gains or income from the disposition of property as a category of gross income. The provision was much like the current N.J.S.A 54A:5-l.c with the following, pertinent differences. First, instead of referencing “the method of accounting allowed for federal income tax purposes,” the bill required that net gains and losses be determined in accordance with “accepted accounting principles and practices.” Second, the bill did not contain the sentence that net gains or net income would not include gains or income from transactions to the extent to which nonrecognition is allowed for federal income tax purposes.
The Senate Revenue, Finance and Appropriations Committee amended the bill to its current form. The committee stated that *403 the purpose of the bill was to tax “gross income, shorn of the deductions and items of tax preference in the Federal Income Tax” and continued that it had “made clarifying amendments to chapters 5 and 6 consistent with that intent.” Among these was the replacement of “the potentially ambiguous rule of ‘accepted accounting principles and practices’ with the phrase ‘the method of accounting allowed for Federal Income Tax Purposes.’ ” Senate Revenue, Finance and Appropriations Committee Statement to Assembly Committee Substitute for Assembly No. 1513, at 2-3 (May 13,1976). The committee’s concern clearly revolved around an appropriate accounting standard, not the incorporation of all the substantive provisions of the Code relating to gains and losses. If the committee had intended that the use of federal income tax accounting methods incorporated not only traditional accounting concepts, i.e. the timing and computing of gains and losses, but also the recognition and nonrecognition provisions of the Code, it surely would not have added to the bill the statement that gains not recognized federally would not be recognized for New Jersey purposes.
It is not inconsistent with Baldwin to conclude that capital loss carryovers are not deductible under the gross income tax. There is no need in this case to decide the scope of the reference to federal income tax accounting methods in N.J.S.A. 54A:5-l.c. It suffices to say here that where there is a specific, contrary provision, such as N.J.S.A. 54A:5-2 effectively denying carryover losses, the specific provision controls.
Ultimately, it is the intent of the New Jersey Legislature that must determine the outcome of this case. It may be quite true, as Baldwin suggests, that the reference to federal income tax accounting methods in the Gross Income Tax Act, is not limited to the accounting provisions of the Internal Revenue Code, i.e., I.R.C. §§ 446-474. In fact, it may be necessary to incorporate some of the Code’s substantive concepts of gain and loss if N.J.S.A 54A:5-l.c is to be workable at all. Clearly, however, the Legislature did not intend to incorporate through N.J.S.A. 54A:5-l.c all the substantive provisions of the Code relating to gains and *404 losses, and just as clearly it did not intend to allow capital loss carryovers.
Brief mention should be made of certain of plaintiffs arguments in its reply brief. Plaintiff suggests that N.J.S.A 54A:5-l.c is the more specific provision that should control over N.J.S.A 54A:5-2 because the former section deals with capital losses, while the latter deals with losses generally. To the contrary, N.J.S.A. 54A:5-2 deals with the timing of losses, which is the issue here, and N.J.S.A. 54A:5-2 is therefore more specific to the issue at hand. Plaintiff suggests that, by recognizing installment sales, the Director on the one hand is incorporating substantive federal tax principles while on the other denying that they control. That is not the case. I.R.C. § 453 pertaining to the installment method of reporting is not a substantive provision, but rather an accounting provision. I.R.C. § 453 is thus incorporated by the reference to federal income tax accounting methods in N.J.S.A 54A:5-l.c, and the Director’s recognition of that fact is fully consistent with his position here.
In sum, capital loss carryovers may not be offset against capital gains under the Gross Income Tax Act. While the reference in N.J.S.A 54A:5-l.c to federal income tax accounting methods may not be limited strictly to the accounting provisions of the Internal Revenue Code, the section does not authorize an offset for capital loss carryovers when another section of the act, N.J.S.A. 54A:5-2, is plainly to the contrary. The decision in Baldwin and the decision here are fully consistent with the intent of the New Jersey legislature to adopt an income tax shorn of the deductions allowed for federal income tax purposes.
The resident credit provision of the New Jersey Gross Income Tax Act provides in pertinent part:
(a) A resident taxpayer shall be allowed a credit against the tax otherwise due under this act for the amount of any income tax or wage tax imposed for the taxable year by another state of the United States or political subdivision of such state, or by the District of Columbia, with respect to income which is also subject to tax under this act.
[N.J.S.A 54A:4-1(a), emphasis added.]
*405 According to the Director, the reference in N.J.SA 54A:4-1(a) to the “the taxable year” means that the New Jersey tax and the other jurisdiction’s tax must be imposed for the same taxable year in order for the credit to apply. Additionally, according to the Director, the purpose of the resident credit is to protect New Jersey residents from double taxation, and Mrs. Guzzardi was not a New Jersey resident when Pennsylvania taxed the entire gain in 1981.
Plaintiff maintains that a tax “imposed for the taxable year by another state” means a tax that was imposed in year one (here 1981) but for year two (here 1988), the year in which New Jersey imposes its own income tax on that income. Second, according to plaintiff, there is no support for the proposition that the resident credit is intended to protect residents; rather, it is intended “to minimize or avoid double taxation.” Ambrose v. Director, Div. of Taxation, 198 N.J.Super. 546, 552, 487 A.2d 1274 (App.Div.1985) (quoting Nielsen v. Director, Div. of Taxation, 4 N.J.Tax 438, 442 (Tax 1982); Jenkins v. Director, Div. of Taxation, 184 N.J.Super. 402, 4 N.J.Tax, 127, 133, 446 A.2d 217 (Tax 1982); Sorensen v. Director, Div. of Taxation, 2 N.J.Tax 470, 475, 184 N.J.Super. 393, 446 A.2d 213 (Tax 1981)).
I find that I am in agreement with the Director. To begin with, this court and the Appellate Division have accepted the Director’s interpretation that the resident credit is available only when double taxation by New Jersey and another state occurs in the same taxable year. Laurite v. Director, Div. of Taxation, 12 N.J.Tax 483, 491 (Tax 1992), aff'd per curiam o.b., 14 N.J.Tax 166 (App.Div.1993), certif. denied, 135 N.J. 301, 639 A.2d 301 (1994). Laurite deals with and approves the Director’s limitation of the credit in respect of S corporation income to situations where a taxpayer can establish that an S corporation distribution taxed in the current year by New Jersey as a dividend was taxed in the same year by another state as S corporation income.[2]
*406 Plaintiff, in fact, does not argue that the words “the taxable year” in N.J.S.A 54A:4-1(a) refer to other than the current year for which taxes are due in,New Jersey. The argument, rather, is that the taxes paid in 1981 to Pennsylvania were taxes “for the taxable year” 1988. The argument is strained. The credit is allowed for income or wage taxes “imposed for the taxable year by another state____” The Pennsylvania taxes at issue here were “imposed for the [1981] taxable year by [Pennsylvania]”. Pennsylvania clearly did not “impose” 1981 taxes for the 1988 taxable year.
Plaintiff continues that its reading of the statute would achieve the purpose of the resident credit to avoid double taxation. The difficulty with the argument is that the Director’s construction of the statute is both consistent with the statutory language and with the purpose of the statute to protect residents against double taxation. The opening words of the statutory provision makes clear that only “a resident taxpayer” has the benefit of the resident credit. This is understandable because, as indicated above (opinion at p. 397) individual residents are potentially subject to tax on all their income received during the taxable year, regardless of source. Any resident receiving income sourced to another state, e.g., income from real estate located in another state, is potentially subject to double taxation. Nonresidents, on the other hand, constitutionally can be taxed only on income sourced to the taxing state. Oklahoma Tax Comm’n v. Chickasaw Nation, — U.S.-,-n. 11, 115 S.Ct. 2214, 2222 n. 11, 132 L.Ed.2d 400, 412 n. 11 (1995) (citing Shaffer v. Carter, 252 U.S. 37, 57, 40 S.Ct. 221, 227, 64 L.Ed. 445, 458 (1920)); See also Pennoyer v. Director, Div. of Taxation, 5 N.J.Tax 386, 392-93 (Tax 1983). There is thus less need for a nonresident credit. Plaintiffs construction would, as the Director argues, allow the credit for taxes paid while an individual was a nonresident of New *407 Jersey, in this case taxes paid by Mrs. Guzzardi to Pennsylvania in 1981. Since both the statutory language and the purpose of the resident credit to protect residents against double taxation are consistent with the Director’s interpretation, the Director’s interpretation must prevail.
As the installment sale gain was taxed by Pennsylvania in 1981 and again by New Jersey in 1988, there is a question as to the constitutionality of the resident credit, or more specifically its denial, as applied in this case. Plaintiff has not briefed the issue, but the Director has. I will therefore briefly address it.
Initially, although a state arguably need not grant a resident credit at all, this does not mean that, once having done so, it can grant or withhold the credit without regard to constitutional constraints. See, e.g., Westinghouse Electric Corp. v. Tully, 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984) (New York’s method of computing credit for DISC shipments from New York ports discriminated against interstate commerce).
The constitutional concern is not on account of either the due process or commerce clause of the United States Constitution. The 1988 installment sale gain was received while Mrs. Guzzardi was a resident of New Jersey, and thus New Jersey had sufficient nexus with the income to subject it to tax. As indicated above, supra (opinion at p. 397) a state may constitutionally tax a resident individual on all income received, regardless of its source. That rule creates a risk of multiple taxation which would be suspect under the commerce clause. See, e.g., Oklahoma Tax Comm’n v. Jefferson Lines, Inc., — U.S. -,-, 115 S.Ct. 1331, 1338, 131 L.Ed.2d 261, 272 (1995) (“Here, the threat of real multiple taxation ... may indicate a State’s impermissible overreaching.”); American Trucking Ass’ns. Inc. v. Scheiner, 483 U.S. 266, 284, 107 S.Ct. 2829, 2840-41, 97 L.Ed.2d 226, 243 (1987) (state flat tax on trucks violated commerce clause because, if imposed by every jurisdiction through which an interstate truck passed, multiple taxation and an “ ‘impermissible interference with free trade’ ” would inevitably result); Goldberg v. Sweet, 488 U.S. 252, 264, 109 S.Ct. 582, 590, 102 L.Ed.2d 607, 618 (1989) (“To the extent that *408 other states’ telecommunications taxes pose a risk of multiple taxation, the credit provision contained in the Tax Act operates to avoid multiple taxation.”); Hellerstein and Hellerstein, State Taxation II, Sales and Use, Personal Income, and Death and Gift Taxes, 1118.08[2] (1992). In the taxation of resident individuals on their income or intangible property, however, the Court has not applied commerce clause principles, perhaps on the theory that “income from interstate business” is not involved, Jefferson Lines, supra, — U.S. at-, 115 S.Ct. at 1339, 131 L.Ed.2d at 272, or that the privilege of a resident to receive income or own intangible property is an “event facilitated by the laws and amenities” of the state of residence, which gives that state the power to tax without apportionment. Ibid.; New York ex rel Cohn v. Graves, supra, 300 U.S. at 312-13, 57 S.Ct. at 467, 81 L.Ed. at 670; Curry v. McCanless, 307 U.S. 357, 367-68, 59 S.Ct. 900, 906, 83 L.Ed. 1339, 1343 (1939) (due process clause does not prevent taxation of an individual’s intangible property both by the state of domicile and by another state that has a legitimate basis for taxing the same property); Hellerstein and Hellerstein, supra, ¶¶ 20.04[1], 21.14.
The constitutional concern in denying the resident credit in plaintiffs case arises from the fact that there does appear to be double taxation and from the suspicion that plaintiff might have avoided the double tax by moving sooner to New Jersey. See Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (Alaska’s scheme of distributing North Slope oil revenues to its citizens based on a particular individual’s duration of residence in Alaska violated the equal protection clause or the right to travel freely among the states).
The Director argues, and I agree, that the double taxation of Mrs. Guzzardi’s installment sale gain results from Pennsylvania’s refusal to recognize installment sale accounting in the year when the sale took place. Under Pennsylvania’s personal income tax as in effect in 1981, regardless of when Mrs. Guzzardi moved to New Jersey, the 1988 installment sale gain at issue here would always have been doubly taxed. In fact, any installment received *409 after the year of sale when the entire gain was taxed by Pennsylvania would be taxed again by a state that recognized installment sale reporting. As New Jersey is not penalizing Mrs. Guzzardi for her delayed move to New Jersey, the denial of the resident credit in plaintiffs case does not violate either the equal protection clause or the right to travel as held in Zobel v. Williams, supra.
In conclusion, Mrs. Guzzardi’s capital loss carryover to 1988 is not allowable under the Gross Income Tax Act to offset her net capital gain in that year; the resident credit is not available because the credit applies only when a resident’s income is doubly taxed in the same taxable year, and there is no constitutional violation in denying the credit under these circumstances. Accordingly, the Director’s assessment of gross income tax is affirmed. The court will enter a judgment dismissing the complaint.

 As enacted in 1971, the Pennsylvania personal income tax did not specifically allow the use of the installment method of reporting. The statute was amended in 1983, by 1983 Pa.Laws 90, effective for sales made on or after January 1, 1984. See Pa.Stat.Ann. tit. 72, § 7301(a), (/.1) (1990). See also 1994 Pennsylvania resident individual income tax forms and instructions at 25 (indicating that the installment method of reporting is allowable for sales made on or after January 1, 1984).

 Subsequent to the taxable year at issue in Laurite, New Jersey enacted L.1993, c. 173, which adopted, in large part, the federal pass through of S *406 corporation income and substantially eliminated for future years the resident credit problem addressed in Laurite. See N.J.S.A. 54A:5-1.p and f, as amended by L. 1993, c. 173, § 9.